# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ERICK MARQUEZ, IRAIDA GARRIGA, formerly known as IRAIDA ORTIZ, and DORIS RUSSEL, on behalf of plaintiffs and a class, )<br><br>Plaintiffs, )<br><br>v. )<br><br>WEINSTEIN, PINSON & RILEY, P.S.; EVAN L. MOSCOV, and NCO FINANCIAL SYSTEMS, INC., )<br><br>Defendants. ) | No. 14 C 00739<br><br>Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

The First Amended Complaint in this case alleges that defendants Evan L. Moscov; his law firm, Weinstein, Pinson & Riley, P.S. (WPR); and their client, NCO Financial Systems, Inc. (NCO), violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, by including a misleading and deceptive statement in state court debt-collection complaints against Erick Marquez, Iraida Garriga (formerly known as Iraida Ortiz), and Doris Russell, the plaintiffs here. The defendants move to dismiss the complaint, and for the reasons set forth below, the motions are granted.

## FACTS

The defendants have been attempting to collect from the plaintiffs several alleged student loan debts. In May 2013 WPR sent initial debt validation letters to plaintiffs Marquez and Garriga as part of its debt collection efforts. Plaintiff Russell received a similar letter in June 2013. The validation letters, attached to NCO's memorandum, notified the recipients that the referenced loans are in default and, as required by 15 U.S.C. § 1692g(a), contained statutory

language describing the recipients' right to "dispute" the validity of the debt with the debt collector. Section 1692g(a) requires, among other things, that within five days of an initial communication, debt collectors provide consumers with a notice stating that the consumer has thirty days from receipt of the notice to dispute the validity of the debt before the debt collector can assume the debt to be valid.

On November 14, 2013, on behalf of NCO, WPR filed three complaints, signed by defendant Moscov, in the Circuit Court of Cook County against plaintiffs Marquez and Garriga. WPR operates as part of NCO's "Attorney Network": firms that pursue claims in court on behalf of NCO as a debt collection agency. According to the state-court complaints, the amounts due under the loans to Marquez and Garriga as of the dates of the Cook County lawsuits were $38,292.42, $18,707.65, and $20,539.85. The state-court complaints alleged that the debts were owned by National Collegiate Student Loan Trust (NCT). On December 27, 2013, WPR filed a similar lawsuit on NCO's behalf against plaintiff Russell in the Circuit Court of Cook County attempting to collect a debt also owed to NCT. The state-court complaint alleged the amount due under this loan as of the date of the Cook County lawsuit was $4,637.69.

All of these state-court complaints included a paragraph ("Paragraph 12"), which mimics a portion of the § 1692g language:

> Pursuant to 11 U.S.C. §1692g(a) [sic], Defendants are informed that the undersigned law firm is acting on behalf of Plaintiff to collect the debt and that the debt referenced in this suit will be assumed to be valid and correct if not disputed in whole or in part within thirty (30) days from the date hereof.

A prayer for relief and signature block containing defendant Moscov's signature and a WPR address follow Paragraph 12 in the state-court complaints.

Each state-court complaint was attached to a standard summons form. The summons forms contained instructions indicating how to respond to the complaint. The summons forms and state-court complaints were included as appendices to the First Amended Complaint in this Court and are therefore part of the pleadings. The summons form for lawsuits concerning claims under $30,000 alerts the state court defendant to "file your written appearance . . . and pay the required fee" and "[f]ile your answer to the complaint before 9:00 a.m. as required by . . . the NOTICE TO THE DEFENDANT on the reverse side." Similarly, the summons form for lawsuits regarding claims over $30,000 instructs the state court defendant to "file an answer to the complaint in this case, . . . or otherwise file your appearance, and pay the required fee . . . ." The summons specifies that the state court defendant must "file [an answer] within 30 days after service of this Summons" and warns: "IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU . . . ."

The plaintiffs' FDCPA complaint alleges that Paragraph 12 is false and misleading, violating 15 U.S.C. § 1692e, because it contradicts the instructions on the summons. First Am. Compl., Dkt # 31 ¶¶ 44, 55. The plaintiffs maintain that Paragraph 12 suggests that the consumer should "dispute" the debt instead of defending the lawsuit, and therefore, that it deceives debtors into defaulting in the collections lawsuits. *Id.* ¶¶ 45-49.

## DISCUSSION

According to the amended complaint, the state court complaints violate one or more provisions of the FDCPA, which prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including: "[t]he false representation of the character, amount, or legal status of any debt," *id.* § 1692e(2)(A), and "[t]he use of any false representation or deceptive means to collect or attempt

to collect any debt or to obtain information concerning a consumer," *id.* § 1692e(10). On the assumption that the language in Paragraph 12 was included in many state-court complaints, the claim purports to be brought on behalf of Marquez, Garriga, Russell, and "(a) all individuals in Illinois, (b) against whom WPR filed a complaint, (c) containing the language of paragraph 12 . . . (d) which complaint was filed on or after February 3, 2013 and prior to February 23, 2014." First Am. Compl., Dkt # 31 ¶ 57.

The defendants each move to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). They raise many of the same arguments, including that 15 U.S.C. § 1692e does not apply to statements contained in a state-court complaint. The defendants also argue, *inter alia*, that Paragraph 12 is not false, deceptive, or misleading as a matter of law because an unsophisticated consumer would not ignore the instructions on the summons in favor of simply "disputing" the debt outside of court.

To survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). The plaintiffs must plead sufficient factual content from which the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations in the form of legal conclusions, as well as threadbare recitals of the elements of a cause of action, supported by conclusory statements, do not suffice. *Adams*, 742 F.3d at 728. Because factual, not legal, allegations are taken as true for purposes of the motion to dismiss, this Court does not put any stock in the plaintiffs' conclusory assertions—for example, their bald allegation that Paragraph 12 is false and misleading. First Am. Compl., Dkt # 31, ¶ 44.

A.      Whether the FDCPA applies to statements in state-court complaints

Defendant NCO devotes a substantial portion of its argument the premise that the FDCPA does not apply to state court complaints. According to NCO, neither the FDCPA's text nor the legislative history suggest that Congress intended § 1692e to apply to statements contained in legal pleadings. Def. NCO's Mem., Dkt # 39-1 at 9. The plaintiffs respond that in 1995 the Supreme Court held in *Heintz v. Jenkins*, 514 U.S. 291, 297 (1995), "that litigation by collection attorneys is covered by . . . the FDCPA." Pls.' Resp. to Defs.' Mot. Dismiss, Dkt # 47 at 13. The plaintiffs add that Congress adopted the Supreme Court's holding via amendments to the FDCPA in 1996 and 2006. *Id.* at 15. In the Court's view, neither *Heintz* nor the amendments definitively answer the question of whether the FDCPA generally applies to statements in pleadings.[1] But several courts of appeals have held that it does, or at least have found an FDCPA violation in a particular case where the deceptive statement was communicated in a legal pleading. *See Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 177 (3d Cir. 2015) (collecting cases). The Seventh Circuit has upheld a finding of liability under § 1692e where a defendant falsely alleged in a state court complaint that it was a subrogee, thus giving a false impression as to the legal status it enjoyed. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000).[2] At other times, though, the Seventh Circuit has expressed doubt whether "the FDCPA controls the contents of pleadings filed in state court." *See Beler v. Blatt, Hasenmiller, Leibsker*

---

[1] *Heintz* states that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz*, 514 U.S. at 299. But there is no question here that attorneys acting as debt collectors are no longer exempt from the FDCPA; the motions to dismiss are not based upon any asserted exemption for Moscov and WPR as attorneys. Subsequent Congressional amendments to the FDCPA exempted legal pleadings from specific requirements of the FDCPA. *See* 15 U.S.C. §§ 1692e(11), 1692g(d), perhaps implying that the remaining sections do apply.

[2] There is no indication that the defendant in *Gearing* argued that the content of state-court pleadings is not subject to the FDCPA, as the defendants do here.

*& Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007) (characterizing that proposition as "far from clear"). And it has all but foreclosed *§ 1692f* claims (the use of unfair or conscionable means to collect a debt) premised on state-court litigation. *See id.* at 475; *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, No. 14–2348, 2015 WL 4509935 (7th Cir. July 27, 2015). Further, *Bentrud* emphasizes that "[t]he FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law." *Id.* at *4; *see also id.* at *5.

Here, the plaintiffs primarily allege that the defendants' conduct violated § 1692e's prohibition on "false, deceptive, or misleading representation[s] or means." Absent any clear exemption for statements in legal pleadings from the reach of § 1962e, the Court will assume that they can violate that section.

### B. Whether Paragraph 12 is False, Deceptive, or Misleading

Assuming the contents of a state court complaint can properly be the subject of a § 1692e claim, the plaintiffs must plausibly allege that a statement was deceptive, false, or misleading under the Seventh Circuit's "unsophisticated consumer" test. The plaintiffs contend that Paragraph 12 is false and misleading because it is "inconsistent with the summons and likely to produce a default if followed." Pls.' Resp. to Defs.' Mot. Dismiss, Dkt # 47 at 28.

Claims under the FDCPA brought within the Seventh Circuit are evaluated under an objective "unsophisticated consumer" standard. *Gruber v. Creditors' Protection Service, Inc.*, 742 F.3d 271, 273 (7th Cir. 2014); *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). The unsophisticated consumer is not as educated in commercial matters as federal judges, but he is also not completely ignorant. *Gruber*, 742 F.3d at 273; *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000). The unsophisticated consumer "may be 'uninformed, naïve, or trusting,'" but also possesses "'rudimentary knowledge about the

financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence' and is capable of making basic logical deductions and inferences.'" *Gruber*, 742 F.3d at 273 (quoting *Pettit*, 211 F.3d at 1060). The unsophisticated consumer is not a "dimwit." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009).

The unsophisticated consumer test differs from the *least* sophisticated consumer test that other circuits use.[3] *See Gruber*, 742 F.3d at 274 ("[T]he unsophisticated consumer is not the *least* sophisticated consumer."). Unlike the least sophisticated consumer, the unsophisticated consumer is not "tied to 'the very last rung on the sophistication ladder.'" *Pettit*, 211 F.3d at 1060 (quoting *Gammon v. GS Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994)). Instead, the unsophisticated consumer is reasonable. *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003); *see also Gammon*, 27 F.3d at 1257; *id.* at 1259 (Easterbrook, J., concurring) ("[T]he trier of fact must inquire whether a misleading implication arises from an objectively reasonable reading of the communication."). A statement will only be considered confusing or misleading if "a significant fraction of the population would be similarly misled." *Pettit*, 211 F.3d at 1060.

Whether an unsophisticated consumer could be confused by a communication relating to an effort to collect a debt is generally a question of fact for a jury, but "a plaintiff fails to state a claim and dismissal is appropriate as a matter of law when it is 'apparent from a reading of the

---

[3] *See, e.g.*, *Gonzales v. Arrow Financial Services, LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011) (stating that the least sophisticated consumer standard protects "consumers of below average sophistication or intelligence, or those who are uninformed or naïve" (internal quotation marks omitted)); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (maintaining that the least sophisticated consumer possesses rudimentary information about the world and would read a collection notice with a degree of care); *Brown v. Card Service Center*, 464 F.3d 450, 454 (3rd Cir. 2006) (describing the least sophisticated consumer standard as "protect[ing] all consumers, the gullible as well as the shrewd, the trusting as well as the suspicious" (internal quotation marks omitted)).

[statement] that not even a significant fraction of the population would be misled by it.'" *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (quoting *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004)). Where there has been no opportunity to present extrinsic evidence of confusion, such as surveys, the defendants' motion can be granted only if "the allegedly offensive language is plainly and clearly not misleading." *Cf. Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (reasoning that where the allegedly offensive language is not misleading, no extrinsic evidence is necessary to show that the unsophisticated consumer would not be confused).

Applying this standard, the language of Paragraph 12 would not deceive an unsophisticated consumer into believing that he should not follow the instructions on the summons, thereby causing the debt collector to win its lawsuit by default judgment. The plaintiffs concede in their response memorandum that "[a]n unsophisticated consumer is likely to accept . . . [Paragraph 12] exactly as written." Pls.' Resp. to Defs.' Mot. Dismiss, Dkt # 47 at 22. And, as written, Paragraph 12 does not implicate or refer to the summons instructions or tell the state-court defendant to do, or not do, anything in response to the lawsuit. Nothing in Paragraph 12 remotely suggests that it supplants or modifies the instructions and warnings provided on the summons form that tell the debtor, in bold type and capital letters, that if she fails to answer, "**A JUDGMENT OF DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT**." A reasonable person—such as the proverbial unsophisticated consumer—would not read Paragraph 12 as relieving him of the obligations to the court set forth in the summons, even if he believed he also had to "dispute" the debt with the debt collector.

Moreover, Paragraph 12's admonition to take action within 30 days is consistent with the instructions set forth in the summonses, which inform the plaintiffs (the defendants in the

8

collection actions) that responses to the complaints are not due for 30 days (or more, in the case of Russell). This is not a case like *Carbonell v. Weinstein Pinson & Riley, P.S.*, No. 14–20273–WPD, 2014 WL 2581043 (S.D. Fla. May 30, 2014), where confusion was possible because the summons provided *less* time to respond than did the paragraph of the complaint paraphrasing § 1692g(a)(3) and advising the debtor that she had a longer period in which to "dispute" the debt. *Id.* at *4. That sort of discrepancy could cause mischief, but here, there was no such risk.

The plaintiffs also argue that including Paragraph 12 in the state court complaint is misleading because, having received a prior § 1692g notice, a debtor would read "dispute" to have the same meaning in both the § 1692g notice and state court complaint, and consequently infer that a written or oral communication with the collection attorney is a sufficient response to the lawsuit. In light of the clear instructions on the summons, however, such an inference would not be objectively reasonable. While an unsophisticated consumer may read literally, she does not interpret "'in a bizarre or idiosyncratic fashion.'" *Gruber*, 742 F.3d at 274 (quoting *Pettit*, 211 F.3d at 1060); *see also Olson v. Risk Management Alternatives, Inc.*, 366 F.3d 509, 513 (7th Cir. 2004) (reasoning that the unsophisticated consumer would be able to understand the difference between two different dollar amounts in a collection notice without further explanation because the unsophisticated consumer is able to make logical deductions and inferences and is not idiosyncratic). Paragraph 12 follows the statutory language of § 1692g(a)(3) and the language refers to how the consumer could "dispute" the debt itself, not how he or she should respond to the lawsuit. Moreover, it states that, absent "dispute," the *debt* will be assumed to be valid, not that the legal claim to collect it will somehow be resolved. Therefore, although an unsophisticated consumer might indeed attempt to dispute the debt directly with the debt-collection firm after reading Paragraph 12, he would not view that effort as a sufficient response

9

to the lawsuit, contrary to the clear instructions on the summons. There is nothing in Paragraph 12 to suggest to the debtor that he cannot raise legal defenses to the collections action or defend the lawsuit. And indeed, the Seventh Circuit has specifically contemplated a scenario in which a debt collector pursues legal action during the thirty-day validation period described in § 1692g(a)(3) (here, the lawsuits came later). In *Bartlett*, the Seventh Circuit presented a safe-harbor debt collection letter that described a debt collector taking legal action during the thirty-day debt validation period. 128 F.3d at 501-02. This implies that the unsophisticated consumer can appreciate the difference between the debt collector's validation process and a collections lawsuit, and simultaneously respond to both.

The plaintiffs further argue that Congress amended the FDCPA in 2006 to remove the obligation to provide a § 1692g notice in a complaint filed as part of a debt collection because it is inherently misleading. However, although the FDCPA no longer requires a debt collector to include a § 1692g notice in a complaint, there is no prohibition against including such a notice either. And again, in a case such as this one where both the notice and summons direct the recipient to respond within the same time period, there is little risk of any confusion causing the result—default—that the plaintiffs fear.

Because an unsophisticated consumer would understand the difference between clear instructions on the front page of a state-court summons, stating in bold capital letters the consequences of not responding to the summons, and a paragraph within the attached complaint that notifies the consumer of the right to dispute the debt with the "undersigned law firm" collecting it, Paragraph 12 is not false, deceptive, or misleading as a matter of law.

* * *

The plaintiffs fail to allege facts that could plausibly lead to the liability of any defendant under the FDCPA. Therefore, the defendants' motions to dismiss are granted, and the first amended complaint is dismissed without prejudice. Any further amended complaint is due within 21 days of this order. In the absence of a timely amended complaint, or if the plaintiffs advise the court that they wish to appeal based on the first amended complaint, this case will be dismissed and judgment will be entered for Cach.

Entered: August 4, 2015

John J. Tharp, Jr.
United States District Judge