**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERICK MARQUEZ, IRAIDA GARRIGA<br>formerly known as IRAIDA ORTIZ, and<br>DORIS RUSSELL,<br>on behalf of plaintiffs and a class,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>WEINSTEIN, PINSON & RILEY, P.S.;<br>EVAN L. MOSCOV, and<br>NCO FINANCIAL SYSTEMS, INC.,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 14-cv-739<br><br>Judge Tharp<br>Magistrate Judge Mason |

**SECOND AMENDED COMPLAINT  – CLASS ACTION**

**INTRODUCTION**

1.      Plaintiffs Erick Marquez, Iraida Garriga and Doris Russell bring this action to secure redress  from unlawful credit and collection practices engaged in by defendants Weinstein, Pinson & Riley, P.S. ("WPR"), Evan L. Moscov ("Moscov"), and NCO Financial Systems, Inc. ("NCO").   Plaintiffs allege violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

**VENUE AND JURISDICTION**

2.      This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28  U.S.C. §1331 and 28 U.S.C. §1337.

3.      Venue and personal jurisdiction in this District are proper because:

          a.      Defendants' collection communications and conduct impacted plaintiffs within this District;

          b.      Defendants do or transact business within this District.

          c.      Defendant Moscov is located within this District.

          d.      Defendant NCO has a registered agent and office within this District.

1

**PARTIES**

4.      Plaintiffs Erick Marquez and (Ms.) Iraida Garriga are individuals who reside in the Northern District of Illinois.  They are son and mother.

5.      Plaintiff Doris Russell is an individual who resides in the Northern District of Illinois.

6.      Defendant WPR is a law firm organized as a Washington (state) professional corporation, with principal offices at 2001 Western Ave., Ste. 400, Seattle, WA 98121-3132.

7.      WPR is engaged in the business of using the mails and telephone to collect consumer debts originally owed to others.

8.      WPR is a debt collector as defined in the FDCPA.

9.      Defendant Moscov is an Illinois attorney who may be found at 469 W. Huron Street, Suite 1701, Chicago, IL 60654.

10.      Moscov  is engaged in the business of using the mails and telephone to collect consumer debts originally owed to others.

11.      Moscov is held out as "Managing Director" at WPR.

12.      Moscov is a debt collector as defined in the FDCPA.

13.      Defendant NCO is a Pennsylvania corporation with principal offices in Horsham, Pennsylvania.  It does business in Illinois.  Its registered agent and office is CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL  60604.

14.       NCO  is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

15.      NCO holds a collection agency license from the state of Illinois.

16.      NCO represents on its web site that it has an "Attorney Network" for filing suits on debts (http://www.ncogroup.com/Services/Agency_Attorney_Network.html):  "We manage a nationwide network through leading-edge technology and the expertise needed to achieve results."  The debts handled through the network include "student loans".

2

17.     In the annual report on Form 10-K filed by NCO's parent with the Securities and Exchange Commission  for the fiscal year ended December 31, 2010, at original page 6, NCO represents that it operates "Attorney Network Services" through which NCO "coordinate[s] and implement[s] legal collection solutions undertaken on behalf of our clients through the management of nationwide legal resources specializing in collection litigation. Our collection support staff manages the  attorney relationships and facilitates the transfer of necessary documentation."

18.     NCO is a debt collector as defined in the FDCPA.

**FACTS RELATING TO PLAINTIFFS ERICK MARQUEZ AND IRAIDA GARRIGA**

19.     Defendants have been attempting to collect from plaintiffs Marquez and Garriga several alleged student loan debts.

20.     On or about November 14, 2013, WPR and Moscov filed three lawsuits in the Circuit Court of Cook County against plaintiffs Marquez and Garriga.  Copies of the complaints, summonses and exhibits are attached as follows:

      a.     Appendix A - 2013 M1 162601;

      b.     Appendix B  - 2013 M1 162599;

      c.     Appendix C - 2013 L 012950.

**FACTS RELATING TO PLAINTIFF DORIS RUSSELL**

21.     Defendants have been attempting to collect from plaintiff Russell an alleged student  loan debt.

22.     On or about December 27, 2013, WPR and Moscov filed a lawsuit in the Circuit Court of Cook County against plaintiff Russell, 2013 M1 171685.  A copy of the complaint, summons and exhibit are attached as Appendix D.

**FACTS RELATING TO ALL PLAINTIFFS**

23.     Each complaint was signed by Moscov.

24.     One of the attachments to each complaint was an affidavit executed by an alleged

employee of NCO.  The affidavit bears the indicia of a "robosigned" affidavit, in that the name of the affiant is rubber-stamped in a blank.

      25.     The alleged debts were sent to WPR by NCO.

      26.     On information and belief,  WPR is part of NCO's "Attorney Network," and the alleged debts of plaintiffs were handled through the "Attorney Network."

      27.     On information and belief, based on affidavits and evidence in *Williams v. NCO Group, Inc.*, 10cv761 (C.D.Cal.), NCO selects counsel, communicates with counsel, and instructs counsel, and the nominal plaintiff in each case does not select, communicate with or instruct counsel.

      28.     NCO directs network law firms to not communicate with the nominal plaintiffs:

> NCO will interact directly with the Client. In some instances, attorneys may interact directly with the Client only after a request is made through NCO and the Client approves. Only in urgent situations, the firm, and a Client may make contact providing that NCO has also been informed of the situation. If a Client initiates contact with an Attorney Firm directly, the firm is responsible, for  the purposes of inventory control and tracking, to notify NCO of the communication.
>
> ln essence, the Attorney Firm's first point of contact is NCO. All statements, notices, information, etc. will go through NCO. (Attorney Firm SOP v.2.1)

      29.     Another portion of the SOP v. 2.1 (4.2.1) states that "All communications regarding accounts will be conducted between the Attorney Firm and NCO only."  On information and belief, subsequent versions of the SOP were consistent.

      30.     Network firms are expressly informed that they are "required to follow NCO's Network Attorney Standard Operating Procedures."

      31.     Both NCO and network firms are paid on commission.

      32.     NCO grades network firms in Attorney Report Cards based on "key performance indices" geared to the speed with which judgments are obtained and collected. The indices include such metrics as "Payer Rates," "Suit  Rate," "Service Rates," "Judgment Rates" and "Spin" or "Liquidation Rates."

      33.     These "key performance indices" encourage the taking of default judgments

against consumers and conduct which encourages consumers to become confused as to the manner in which they respond to lawsuits and default.

34.     On information and belief, all acts complained of herein were taken by WPR or Moscov on behalf of NCO, as its authorized agents.

35.     The complaints and attachments were form documents, regularly used by WPR and Moscov.

36.     Paragraph 12 of each of the complaints states:  "Pursuant to 11 U.S.C. §1692g(a) [sic  –  15 U.S.C.?], Defendants are informed that the undersigned law firm is acting on behalf of Plaintiff to collect the debt and that the debt referenced in this suit will be assumed to be valid and correct if not disputed in whole or in part within thirty (30) days from the date hereof."

37.     This statement is routinely included in complaints by defendants.

38.     NCO has an Attorney Network Agreement with each of its network law firms.  An example of such an agreement is attached as Appendix E.  On information and belief, the agreements are standard forms prescribed by NCO.  Under this agreement, NCO has the right to review all files it has placed with the network law firm (paragraphs 14, 15, 17).

39.     NCO had the right to prevent the inclusion of the statement in paragraph 12 of each of the complaints.

40.     NCO has the right to direct network law firms to use particular documents.  On information and belief, the affidavit attached to each complaint is prescribed by NCO.

41.     NCO has previously been sued for matters included in state court pleadings by network attorneys, e.g., *Williams v. NCO Group, Inc.*, 10cv761 (C.D.Cal.), and either reviews the forms they use or chooses not to inform itself of problems in that regard.

42.     No provision of law requires or authorizes the inclusion of the quoted statement in a complaint.  It is not part of the allegation of any cause of action and is not required or authorized by any state or federal law.  It was gratuitously included to mislead consumers.

43.     Each complaint is stamped with a filing date.

44.     The statement in paragraph 12 is false and misleading, in that it contradicts the instructions on the summons, which either (a) requires filing of an appearance approximately 30 days after issuance and allows an additional 10 days to file a motion or responsive pleading if the amount sought exceeds $10,000 (M1 cases) or (b) requires filing of an appearance 30 days after service and allows an additional 10 days to file a motion or responsive pleading (Law Division cases).

45.     The complaints in 13 M1 162601 and 13 M1 162599 were each dated November 14, 2013.  The return date on each was December 13, 2013.  Each defendant had until December 23, 2013 to file an answer or motion with respect to the complaint.  Paragraph 12 stated that the defendant had until December 14, 2013 to dispute the debt.   After various proceedings these cases were dismissed in June 2014.

46.     The complaint in 2013 L 12950 was dated November 14, 2013.   One defendant was served on November 27, 2013.  The other defendant was not served but elected to appear. Paragraph 12 stated that both defendants had until December 14, 2013 to dispute the debt.  The defendant who was served actually had until December 26, 2013 to respond to the complaint; the unserved defendant elected to do so on the same date.  After motion practice the lawsuit was dismissed in July 2014.

47.     The complaint against Ms. Russell in 2013 M1 171685 was dated December 27, 2013.  It has a return date of February 5, 2014.  Since it sought less than $10,000, the only response required was an appearance, to be filed by February 5, 2014.  Under the Illinois court rules, all allegations were deemed to be denied.  Paragraph 12 stated that Ms. Russell had until January 26, 2014 to dispute the debt.  After various proceedings, this case was dismissed in June 2014.

48.     Paragraph 12 of each complaint thus required action within a different time frame than the summons and court rules.  Paragraph 12 is also easier to read than the instructions in the

6

summons.

49.     If the complaint seeks $10,000 or less, as is the case with plaintiff  Russell and 2013 M1 171685, the allegations are deemed denied under Illinois court rules, and only an appearance is required.  Paragraph 12 imposes a burden in such cases that is completely contrary to Illinois court rules.

50.     The statement in paragraph 12 indicates that the only option open to the consumer is to dispute  the debt, instead of challenging the sufficiency of the pleading, the right of the collection plaintiff to enforce any claimed debt, the sufficiency of service, and similar matters..

51.     The statement in paragraph 12, by not limiting the assumption of validity to the debt collector, indicates that if the consumer does not dispute the debt as stated therein, he or she will forfeit the right to dispute the debt.  *Hart v. FCI Lender Services*, No. 14-191-CV, 2015 WL 4745349, *7 (2d Cir., August 12, 2015) ("Indeed, defective § 1692g notices pose particular dangers to consumers. Here for instance, because the Letter states that the debt will, after thirty days, be 'assumed to be valid,' a consumer who fails timely to act upon the Letter might believe that she has forfeited her right to challenge the accuracy of FCI's debt assessment. But under §1692g(a)—which FCI paraphrased incompletely in the Letter—such an unchallenged debt may be assumed to be valid only by the debt collector, leaving the consumer free to contest the debt with the lender either directly or in the courts. . . . By misleading the consumer into believing she had forfeited her right to dispute the validity of her putative debt with the lender, FCI would have frustrated a major objective of the FDCPA.").

52.     In this regard, there are serious issues regarding the right of the National Collegiate collection plaintiffs to sue.  For example, another National Collegiate case filed in Cook County Circuit Court, 2014 M1 150416, was recently nonsuited after the borrower, Brandon Taylor,  answered and alleged that he had been previously sued on the same loan by The Education Resources Institute, Inc. ("TERI"), in case 2008 M1 174082, that a judgment was entered, that he paid the judgment through wage deductions, and that the last dollars collected

7

were returned as an overpayment.  The 2008 case file contained an assignment of the loan to
TERI.  The 2014 case against Mr. Taylor was supported by an "affidavit" similar to that attached
to the complaints in Appendices A-D, alleging in conclusory terms that a National Collegiate
trust had the right to sue, without mention of the assignment to TERI.   The language of
defendants' paragraph 12 indicates that such matters as the standing of the collection plaintiff,
and the sufficiency of the allegations of standing and documentation of the purported transfer of
the loans, cannot be raised.

     53.    An Ohio appellate court recently held that the type of documents which
are  attached to complaints by National Collegiate Trust  are not sufficient to show that the
plaintiff has any right to enforce any alleged loan. *National Collegiate Student Loan Trust 2003-
1 v. Beverly*, Nos. H-13-010 and 011, 2014 WL 4824355 (Ohio App., 6th Dist., Sept. 30, 2014).
Cases filed in Illinois have the same deficient documentation.

     54.    "Disputed" suggests some action other than filing an appearance and answer or
motion, in accordance with the summons.

     55.    In some cases, WPR will have sent to the consumer an initial demand letter
indicating that "disputed" means an oral or written communication to WPR.

     56.    Unless the consumer understands that "disputed" now means something
completely different, a default judgment will result.

     57.    The creation of uncertainty concerning the manner in which consumers can
defend collection lawsuits is consistent with and furthers the fulfillment of the "key performance
indices" used by NCO to grade network firms.

     58.    NCO's regularly engages in and expressly or tacitly authorizes deceptive and
unfair conduct in connection with the collection of debts, as shown by the following:

        a.    The affiant who signed the affidavits in Appendices A-C, Chandra
                 Alphabet, signed an agreement with the Georgia Bar to cease and desist
                 from engaging in the unauthorized practice of law in March 2013;

b.      On July 9, 2013, NCO and related entities entered into a consent judgment in *United States v. Expert Global Solutions, Inc., formerly known as NCO Group, Inc., NCO Financial Systems, Inc., ALW Sourcing, LLC, Transworld Systems Inc.*, 3:13cv2611 (N.D.Tex.), agreeing to injunctive relief and to pay $3.2 million in penalties for improper debt collection practices involving harassment and abuse.

c.      In February 2012, the Attorneys General of 19 states entered into a settlement with NCO Financial Systems, Inc. to resolve allegations of deceptive and unfair debt collection practices. The states involved were Alaska, Arkansas, Idaho, Illinois, Iowa, Kentucky, Louisiana, Michigan, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, Vermont, and Wisconsin. Pursuant to this settlement, NCO Financial Systems, Inc. agreed to pay $575,000 to the 19 states for consumer protection enforcement efforts and an additional $50,000 for each participating state to refund to consumers with valid claims.

d.      In 2010-2012, NCO Financial Systems, Inc., signed a series of consent orders with the Minnesota Department of Commerce, involving such conduct as hiring unfit persons.

e.      In November 2010, NCO Financial Systems, Inc., signed a consent order with the Arizona Department of Financial Institutions involving, among other things, unauthorized practice of law.

f.      In July 2008, the New York Attorney General began investigating whether NCO Financial Systems, Inc., engaged in the use of fraudulent caller-identification information when communicating by telephone with consumers ("spoofing"). In March 2010, NCO Financial Systems, Inc.

9

resolved the New York Attorney General's investigation and charges by agreeing to an Assurance of Discontinuance.

g.     In December 2008, the Texas Attorney General charged NCO Financial Systems, Inc. with violations of the Texas Deceptive Trade Practices - Consumer Protection Act and Texas Debt Collection Act. NCO Financial Systems, Inc. resolved the Texas action by entering into an Assurance of Voluntary Compliance, entered by a Texas court, requiring NCO Financial Systems, Inc. to cease the alleged violations and to pay $400,000 in settlement payments, restitution, attorneys' fees and investigation costs.

h.     In January 2006, NCO Financial Systems, Inc., entered into a settlement with the Pennsylvania Attorney General to resolve numerous claims of using false, deceptive, or misleading representations or means and harassment in connection with the collection of debts.

i.     In 2004, NCO Group Inc., parent of NCO Financial Systems, Inc., settled Federal Trade Commission charges that it reported inaccurate information about debtors accounts to credit reporting agencies and paid $1.5 million in civil penalties.

## COUNT I – FDCPA

59.     Plaintiffs incorporate paragraphs 1-58.

60.     Defendants violated 15 U.S.C. §1692e by including paragraph 12 in their form complaints. *Thomas v. Simpson & Cybak,* 392 F.3d 914, 919-20 (7th Cir. 2004) ("Sending the notice along with the pleadings, or shortly thereafter, might also confuse the debtor. A debtor must comply with deadlines imposed by court rules and judges, even if that debtor has requested verification of the debt"); *Goldman v. Cohen*, 445 F.3d 152, 156-157 (2nd Cir. 2006) ("In cases where debt collectors send debtors a validation notice either along with a summons and complaint or shortly thereafter, we recognize the risk that some debtors will become confused.

10

To avoid such confusion, it is imperative that a debt collector (1) 'make clear that the advice contained in the § 1692g validation notice in no way alters the debtor's rights or obligations with respect to the lawsuit' and (2) 'emphasiz[e] that courts set different deadlines for filings.'"); *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135-137 (2ⁿᵈ Cir. 2010); . *Hart v. FCI Lender Services*, No. 14-191-CV, 2015 WL 4745349, *7 (2d Cir., August 12, 2015); *Carbonell v. Weinstein Pinson & Riley, P.S.*, No. 14–CV–20273–WPD, 2014 WL 2581043, *4 (S.D.Fla., May 30, 2014); *McWilliams v. Advanced Recovery Systems, Inc.,* 3:15cv70-CWR-LRA, 2015 WL 3554595 (S.D.Miss., June 5, 2015) (Reeves, J.); *Walker v. Greenspoon Marder, P.A.*, 13-CV-14487, 2014 WL 7174220 (S.D.Fla., Dec. 17, 2014) (Marra, J.); *Lewis v. Marinosci Law Group, P.C.*, No. 13-61676, 2013 WL 5789183, *3 (S.D.Fla. Oct.29, 2013); *Battle v. Gladstone Law Group, P.A.*, 951 F.Supp.2d 1310 (S.D.Fla. 2013) (Martinez, J.); *Freire v. Aldridge Connors, LLC*, 994 F.Supp.2d 1284 (S.D.Fla. 2014) (Hurley, J.); *Desir v. Greenspoon Marder, P.A.*, No. 14-CV-61102, 2014 WL 2767230 (S.D.Fla., June 18, 2014).

61.     Section 1692e provides:

**§ 1692e.        False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)     The false representation of--**

**(A)     the character, amount, or legal status of any debt; . . .**

**(10)     The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . .**

## CLASS ALLEGATIONS

62.     Plaintiffs bring this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

63.     The class consists of (a) all individuals in Illinois, (b) against whom WPR filed a complaint, (c) containing the language in paragraph 12 of Appendices A-D, (d) which complaint

11

was filed on or after February 3, 2013 and prior to February 23, 2014.

64.    The class is so numerous that joinder of all members is not practicable. Based on an electronic search of court files, there are over 100 class members.

65.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether the language complained of violates the FDCPA.

66.    Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

67.    Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and FDCPA litigation.

68.    A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible.

    b.    Members of the class are likely to be unaware of their rights;

    c.    Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class and against defendants for:

(1)    Statutory damages ($1,000 per plaintiff per alleged debt and the lesser of $500,000 or 1% of defendants' net worth for the class);

(2)    Attorney's fees, litigation expenses and costs of suit;

(3)    Such other and further relief as the Court deems proper.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs

12

James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
    & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

       Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


                <u>s/Daniel A. Edelman</u>
                Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

14

## <u>DOCUMENT PRESERVATION DEMAND</u>

Plaintiffs hereby demand that each defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with any plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiffs demand that defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendants.

<u>s/Daniel A. Edelman</u>
Daniel A. Edelman

15

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on August 14, 2015, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system, which sent notification of such filing to the following parties via electronic mail:

James O. Latturner, jlatturner@edcombs.com

Tiffany Nicole Hardy,  thardy@edcombs.com,

Justin M Penn, jpenn@hinshawlaw.com

Cathleen M. Combs. ccombs@edcombs.com

Michael D. Slodov, mslodov@sessions-law.biz

James Kevin Schultz, jschultz@sessions-law.biz

Shannon M Geier, sgeier@sessions-law.biz

David M Schultz, dschultz@hinshawlaw.com


s/Daniel A. Edelman
Daniel A. Edelman

16