IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERICK MARQUEZ, IRAIDA GARRIGA, formerly known as IRAIDA ORTIZ, and DORIS RUSSEL, on behalf of plaintiffs and a class, <br><br> Plaintiffs, <br><br> v. <br><br> WEINSTEIN, PINSON & RILEY, P.S.; EVAN L. MOSCOV, and NCO FINANCIAL SYSTEMS, INC., <br><br> Defendants. | No. 14 C 00739 <br><br> Judge John J. Tharp, Jr. |

### ORDER

The defendants' motions to dismiss the Second Amended Complaint [68], [70] are granted for the reasons set forth in the Statement below. The Second Amended Complaint is dismissed with prejudice and judgment will be entered in favor of the defendants.

### STATEMENT

In this purported class action under the Fair Debt Collection Practices Act ("FDCPA"), the Court previously dismissed the plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *Marquez v. Weinstein, Pinson & Riley, P.S.*, No. 14 C 00739, 2015 WL 4637952 (N.D. Ill. Aug. 4, 2015). Familiarity with the facts of the case and the Court's prior ruling is assumed, as nothing has changed. The plaintiffs filed a Second Amended Complaint, Dkt. # 67, and the defendants—Weinstein, Pinson & Reilly and Moscov jointly, and NCO Financial Systems[1] for itself—move to dismiss once more.

The Second Amended Complaint reprises all the same allegations of the First Amended Complaint and adds a handful of new paragraphs. The plaintiffs allege that the defendants used

---

[1] NCO's brief, see Dkt. # 68-1 at 6-10 purports to incorporate by reference large portions of its prior brief and this Court's prior ruling, "pursuant to Fed.R.Civ.P. 10(c)." That rule, however, allows incorporation by reference in a *pleading*, and motions and briefs are not pleadings. *See* Fed. R. Civ. P. 7(a). Moreover, if the Court were to accept such incorporation, NCO's brief (which already extends to 14 pages) would exceed the limitations on length imposed by Local Rule 7.1, from which NCO has not sought any relief. The Court considers only those arguments NCO develops in its current briefs.

false, deceptive, or misleading means to attempt to collect their alleged debts because in the underlying state court collections actions, the complaints contained the following paragraph:

> Pursuant to 11 U.S.C. §1692g(a) [*sic* as to the Title], Defendants are informed that the undersigned law firm is acting on behalf of Plaintiff to collect the debt and that the debt referenced in this suit will be assumed to be valid and correct if not disputed in whole or in part within thirty (30) days from the date hereof.

According to the plaintiffs, this "Paragraph 12" contradicts the language on the summonses that instructed the alleged debtors (defendants in state court) to pay the required fee and file an answer, or in Russell's case, just an appearance, with the court. They contend, therefore, that the statement is false, deceptive, or misleading within the meaning of § 1692e of the FDCPA. For purposes of this motion, as with the prior one, the Court will assume that the content of state-court pleadings is regulated by the FDCPA, although that proposition appears to be in doubt in this Circuit. *See Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 875 (7th Cir. 2015) ("The FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law"); *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007) (doubting, but assuming *arguendo*, that § 1692e "applies to complaints, briefs, and other papers filed in state court").

In Paragraphs 45 to 49 of the new Second Amended Complaint, the plaintiffs now set forth a timeline of the deadlines in the state-court collections actions, presumably to address the portion of this Court's analysis noting that Paragraph 12 of the state court complaints did not materially conflict with the summonses because the summonses allowed *more* time to respond than did Paragraph 12. *See* 2015 WL 4637952, at *4. The Court reasoned that a debtor therefore could not be "misled" into missing the state court's deadline and defaulting by reason of acting within the time provided in Paragraph 12.[2] The allegations set forth in the new paragraphs of the Second Amended Complaint do nothing to undermine that logic; rather, they simply confirm that Paragraph 12 provided less time to dispute the debts than the summonses provided to answer the complaints. Acting within Paragraph 12's "deadline," then, would not cause a plaintiff to default even if misled by it. *See, e.g.*, Compl. ¶ 45, Dkt. # 67 ("Each defendant had until December 23, 2013 to file an answer or motion with respect to the complaint. Paragraph 12 stated that the defendant had until December 14, 2013 to dispute the debt."). The simple fact that there was a "different time frame"—for two distinct actions—does not render Paragraph 12 false, deceptive, or misleading.

The other new paragraphs in the Second Amended Complaint, Paragraphs 51 to 53, consist of legal argument dependent on the premise, already rejected by this Court, that an unsophisticated consumer would be misled by Paragraph 12 into believing that she could not

---

[2] Of course, this danger is only possible in the first place if an unsophisticated consumer would choose to "dispute" the debt directly with the debt collector *instead of* (rather than in addition to) filing an appearance in court. Given the clear instructions on the summons, however, and as discussed further below, the Court disagrees that an unsophisticated consumer would simply ignore the summons after reading Paragraph 12.

raise legal defenses to the debt in court. As the Court previously explained, Paragraph 12 says nothing about how the debtor can or should proceed in the lawsuit; even if the debt is assumed to be valid by the collection agency, the debtor is free to challenge the enforceability of the debt in court. *See* 2015 WL 4637952, at *4. In short, the unsophisticated consumer would not, in the Court's view, read the summons and complaint and then conclude "the only option open to the consumer is to dispute the debt, instead of challenging the sufficiency of the pleading, the right of the collection plaintiff to enforce any claimed debt, the sufficiency of service, and similar matters." *See* Compl., Dkt. # 67 ¶ 50. To the extent that the plaintiffs now argue that there are "serious issues" regarding NCO's right to sue in state court at all (Resp., Dkt. # 75 at 4), that issue is not before this Court.

To the extent that the Second Amended Complaint now contains additional citations to case law—not something a complaint ordinarily needs to contain—there is nothing in it, or in the plaintiffs' response to the motion to dismiss, that persuades the Court that the legal analysis that led to the dismissal of the First Amended Complaint was not sound. Defendant NCO points out, correctly, that although other courts have found improper 1692g notices to be misleading, none of the plaintiffs' cited authorities "involve the service of an undisputed, fully compliant § 1692g validation notice to the consumers well before the service of summons and complaint, and the expiration of the 30 day dispute validation period *before* filing or service of summons and complaint containing language comparable to paragraph 12." Reply, Dkt. # 77 at 2. *See also* WPR Reply, Dkt. # 78 at 3 (correctly noting that plaintiff cites no case in which an FDCPA claim was stated "where a valid initial notice was sent, and where the allegedly offending language is sent after the expiration of the validation period").

The Court's initial decision was based primarily on the conclusion that an unsophisticated consumer would not ignore the clear instructions and warnings on the summons because of Paragraph 12 of the state-court complaints. The cases added to the Second Amended Complaint do not undermine that conclusion. In particular, *Hart v. FDI Lender Services, Inc.*, 797 F.3d 219 (2d Cir. 2015), addresses the perils of defective § 1692g notices that might be read to suggest a debt assumed valid by the debt collector cannot be challenged by the consumer with the lender, either directly or in the courts. *Id*. at *7. But this case is very different; *Hart* pertained to direct communications with the debtor, whereas here the representation came in the context of a lawsuit, where the summons speaks for itself, and speaks clearly. Moreover, in contrast to *Hart*, in this case the language of Paragraph 12 does limit the assumption of validity to the debt collector, that is, "the undersigned law firm," rather than suggesting that the debt will be assumed valid for all purposes.[3]

---

[3] It should also be noted that many of the cases the plaintiffs cite were decided in circuits that employ a different, and lower, standard for evaluating whether a collections communication is misleading or deceptive than does the Seventh Circuit. As noted in the Court's original opinion, while the standard applicable in this Circuit is the "unsophisticated consumer" standard, other circuits (including the Second Circuit, where *Hart* was decided; *see Jacobson v. Healthcare Fin'l Servs., Inc*., 516 F.3d 85, 90 (2d Cir. 2008)) employ a "least sophisticated consumer standard" that lowers the bar significantly in assessing whether a communication is misleading or deceptive. Whereas the unsophisticated consumer possesses "rudimentary knowledge about the financial world, is wise enough to read collection notices with added care,

Also inapt is the plaintiffs' reliance on cases decided before § 1962g(d) became law; that subsection did away with the requirement imposed by some courts that legal pleadings are "initial communications" under the FDCPA and therefore must be preceded or accompanied by verification notices. *See Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007). The cases that required a contemporaneous validation notice, however, were premised on a legal pleading being an "initial communication." *See, e.g., Thomas v. Simpson & Cybak,* 392 F.3d 914, 919-20 (7th Cir. 2004) (*en banc*); *Goldman v. Cohen*, 445 F.3d 152, 156-157 (2nd Cir. 2006). *Simpson & Cybak*, like *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 136 (2d Cir. 2010) and other cases where a lawsuit was served during the initial validation period, also differs because here a valid 1962g notice had already been provided, and the requisite validation period had already expired, before the complaint was served. There may be some logic to the premise that a ***first*** § 1962g notice served with a collections complaint, or a complaint served ***during*** the initial validation period, could confuse the debtor about how to respond, and to whom, but the Court need not decide whether the potential confusion in such instances could support an FDCPA claim, because here the plaintiffs are consumers who had already received proper § 1692g notices and as to whom the initial validation period had already lapsed. There is, then, no basis for concern that the validation rights will be overshadowed by the lawsuit. *See Ellis*, 591 F.2d at 137 (additional clarification is required "***[i]f the debt collector chooses not to wait*** until the end of the validation period to commence debt collection litigation")(emphasis added).

Furthermore, the unequivocal language of the summons prevents the unsophisticated consumer from being tricked into ignoring the lawsuit, even if the language of Paragraph 12 could be read in such a way to create such a risk. If, as the plaintiffs contend, "dispute" would be taken to refer to written or oral communication with the collection attorney, there is nothing in Paragraph 12, or any other statement to the debtor, suggesting that initiating such a "dispute" over the validity of the debt with the debt collector would also be a sufficient response to the lawsuit, overriding the prominent warnings on the summons. Any connection between disputing the debt and responding to the lawsuit is, moreover, particularly tenuous where, as here, there was a similar communication concerning the ability to dispute the debt with the collector directly before any lawsuit was filed.

---

possesses reasonable intelligence and is capable of making basic logical deductions and inferences," *Gruber*, 742 F.3d at 273 (internal quotation marks omitted), the "least sophisticated consumer" protects "consumers of below average sophistication or intelligence, or those who are uninformed or naïve." *Gonzales v. Arrow Financial Services, LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011). *See also Jacobson*, 516 F.3d at 90 ("The purpose of the least-sophisticated-consumer standard, here as in other areas of consumer law, is to ensure that the statute protects the gullible as well as the shrewd."). Cases governed by this lower standard have little, if any, relevance to the question of whether the communications at issue in this case were misleading or deceptive under the controlling standard in this Circuit. The plaintiffs, however, ignore the distinction between the applicable standards.

Finally, that Paragraph 12 is gratuitous[4] does not make it misleading. An unsophisticated consumer, who, by definition is reasonable, would not apply plaintiffs' idiosyncratic, unreasonable interpretation of the state-court complaint and summons and conclude that "the *only option* . . . is to dispute the debt, instead of challenging the sufficiency of the pleading, the right of the collection plaintiff to enforce any claimed debt, the sufficiency of service, and similar matters." Pl. Resp., Dkt. # 75 at 4 (emphasis added). In short, nothing in Paragraph 12 can reasonably be construed by a consumer who "is wise enough to read collection notices with added care, possesses reasonable intelligence and is capable of making basic logical deductions and inferences," *Gruber*, 742 F.3d at 273, to say: "If you tell the debt collector that you dispute this debt, you can simply disregard all those dire warnings on the official court summons that has been served on you and pretend that this lawsuit to collect that debt was never filed. Nothing bad will happen to you." Yet that is the construction of Paragraph 12 that the plaintiffs urge. Before the Court would effectively excuse a debtor who ignores a valid summons, the potential for the communication to mislead or confuse must be actual rather than based on an unreasonable, unlikely interpretation.

Because the Court finds as a matter of law that the unsophisticated consumer would not adopt the plaintiffs' untenable interpretation of Paragraph 12, and because the Second Amended Complaint does not plead any matter that changes the Court's previous analysis, the defendants' motions to dismiss are granted. Given the Court's legal conclusions, further pleading will not produce a viable claim; therefore, the dismissal is with prejudice.

Date: October 8, 2015

John J. Tharp, Jr.
United States District Judge

---

[4] Despite concluding that, as a matter of law, Paragraph 12 is not misleading for the purposes of the FDCPA where it is not a first statutory validation notice and where it does not have the potential to lull the debtor into thinking there is more time to respond to the complaint, the Court does not intend to endorse the continued use of this paragraph, which is unnecessary, appears to be based upon long-since overruled requirements, and contains an incorrect citation to the U.S. Code. To the extent that additional time to dispute the debt is offered, especially in the text of a pleading, the debt collector would do well to observe the "best practice" of explaining to the debtor the relationship, or lack of, between FDCPA validation proceedings and the collections litigation. *Cf. Ellis*, 591 F.3d at 137. In this case, however, although the plaintiffs plausibly allege a failure to follow best practices, they do not allege facts that could lead to liability under the FDCPA. Moreover, the gratuitous inclusion a Paragraph 12 does not require the inference that it is there to confuse, as the plaintiffs suggest. Equally likely is that it is a vestige of a now-superseded legal framework.