IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERICK MARQUEZ et al., | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) Judge John J. Tharp Jr. ) |
| WEINSTEIN, PINSON & RILEY, P.S. et al., | ) ) Case No.: 14-cv-00739 ) |
| Defendants. | ) Magistrate Judge Mason ) ) |

**MOTION TO SUBSTITUTE TRANSWORLD SYSTEMS INC.
FOR EGS FINANCIAL CARE, INC. AND TO DROP
EGS FINANCIAL CARE, INC., OR IN THE ALTERNATIVE TO
JOIN A NECESSARY PARTY**

Now comes Defendant, EGS Financial Care, Inc. (EGS), by and through the undersigned counsel, and pursuant to Fed.R.Civ.P. 21 and 25(c), hereby moves this honorable court to substitute Transworld Systems Inc. as a party Defendant to this action in place of EGS, and to drop EGS as a party, for the reason that by virtue of certain contractual agreements, NCO Financial Systems Inc., transferred, certain of its assets to Transworld Systems Inc. (TSI), and TSI assumed all liabilities associated with said assets, including those central to Plaintiffs' claims. By virtue of a Stock Purchase Agreement and a Restructuring Agreement, EGS was divested of any interest in the stock, assets and liabilities of TSI, effective November 1, 2014, including any liability associated with this action, which was expressly assumed by TSI. In the alternative, EGS moves this honorable Court pursuant to Fed.R.Civ.P. 12(b)(7) and 19, to order the joinder of TSI as a necessary party. A memorandum in support is attached and incorporated herein by reference as though fully rewritten herein.

1

Respectfully submitted,

/s/Michael D. Slodov
Michael D. Slodov (Ohio SCR #0051678)
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLC
15 E. Summit Street
Chagrin Falls, OH 44022-2709
(440) 318-1073
(fax) (216) 359-0049
(email) mslodov@sessions.legal

Morgan I. Marcus, Esq.
Sessions Fishman Nathan & Israel, LLC
120 South LaSalle Street, Suite 1960
Chicago, Illinois 60603
(312) 578-0990
Attorneys for Defendant,
EGS Financial Care, Inc.
(formerly known as NCO Financial Systems, Inc.)

## PROOF OF SERVICE

I hereby certify that on February 17, 2017 a copy of the foregoing was filed electronically with the Clerk of Court using the CMF/ECF system, which will send notification of such filing to the following:

Daniel A. Edelman
Cathleen M. Combs
James O. Lattumer
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
20 South Clark Street, Suite 1500
Chicago, IL 60603

courtecl@edcombs.com
ccombs@edcombs.com
jlatturner@edcombs.com
thardy@edcombs.com

David M. Schultz
Justin M. Penn
Hinshaw & Culbertson
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
Email: jpenn@hinshawlaw.com
Email: dschultz@hinshawlaw.com

     In addition, pursuant to Fed.R.Civ.P. Rule 25(a)(3) and Rule 4, on February 17, 2017, a true copy of the foregoing was sent to Transworld Systems, Inc., c/o Kristian Knochel, Senior Legal Counsel, Transworld Systems Inc. 5100 Peachtree Industrial Blvd., Norcross, GA 30071.

                                         /s/ Michael D. Slodov
                                         Attorneys for EGS Financial Care, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERICK MARQUEZ et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Judge John J. Tharp Jr. |
| WEINSTEIN, PINSON & RILEY, P.S. et al., | ) Case No.: 14-cv-00739 |
| | ) Magistrate Judge Mason |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF
MOTION TO SUBSTITUTE TRANSWORLD SYSTEMS INC.
FOR EGS FINANCIAL CARE, INC**.

**I.    INTRODUCTION**

Plaintiffs' second amended complaint (SAC) filed in this action alleges that "[o]n or about November 14, 2013, WPR and Moscov filed three lawsuits in the Circuit Court of Cook County against plaintiffs Marquez and Garriga … [and] [o]n or about December 27, 2013, WPR and Moscov filed a lawsuit in the Circuit Court of Cook County against plaintiff Russell…." Doc. No. 67, ¶¶ 20, 22.  The SAC seeks to maintain this action on behalf of a class, defined in pertinent part as " (a) all individuals in Illinois, (b) against whom WPR filed a complaint, (c) containing the language in paragraph 12 of Appendices A-D, (d) which complaint was filed on or after February 3, 2013 and prior to February 23, 2014." Doc. No. 67, ¶ 63.

When this action was filed on February 3, 2014, NCO Financial Systems, Inc. (NCO or NCO FS) was named as a party Defendant. Doc. No. 1. On September 30, 2016, Plaintiff moved to amend the caption of the complaint to replace NCO with EGS Financial Care, Inc. (EGS) because NCO changed its corporate name on May 16, 2015. Doc. No. 96. The Court granted

1

Plaintiff's motion October 21, 2016. Doc. No. 106. EGS' amended answer to Plaintiffs' SAC filed November 2, 2016, asserted that Plaintiffs had failed to join a necessary and indispensable party. Doc. No. 108, Affirmative Defense ¶ 2, PageID #1557. After securing a protective order on January 18, 2017, EGS produced the referenced contracts which have been designated as confidential. Doc. No. 113. Copies of the referenced contracts have separately been submitted for filing under seal.

## II.     STATEMENT OF FACTS

On October 31, 2013, NCO transferred the Attorney Network Services business segment to Outsourcing Solutions Inc., (OSI) a Delaware corporation, who one day later, transferred the asset to Transworld Systems Inc. (TSI). Phariss Declaration, ¶ 9; Exhibit 1, EGS 00449-455, 451-452, 461. At the same time, OSI also assumed "all Liabilities of NCO FS arising from or relating to the Assets [defined on schedule I to include the "customer contracts of NCO FS relating to the … Attorney Network Services business segment[]"] and shall pay, perform and discharge when due such Liabilities, irrespective of whether such Liabilities arise before, on or after the Closing Date (the "Assumed Liabilities")." Exh. 1, EGS 00451-452, 461. The agreement goes on to provide that in turn, OSI transferred to TSI and TSI assumed the same assets and liabilities that NCO transferred to OSI, and expressly states that "TSI hereby assumes and becomes responsible for the Assumed Liabilities and shall pay, perform and discharge when due such Liabilities." Exh. 1, NCO 00452. The agreement further provides that "TSI hereby assumes responsibility for and agrees to indemnify, defend and hold NCO FS harmless against all of the Assumed Liabilities." Exh. 1, NCO 00452.

At the time of the October 2013 transfer, NCO, TSI and OSI were all sister subsidiaries of Expert Global Solutions, Inc. (renamed from NCO Group, Inc., in 2007). Phariss Dec., ¶ 2, 4.

In October, 2014, the remaining assets and liabilities of NCO FS were transferred to TSI. Phariss Dec., ¶ 14; Exhibit 2, NCO 00621-00643, 00624-625, 00638, 00640. The October Restructuring Agreement reiterates that TSI assumed the Attorney Network Service segment and that TSI assumed all associated liabilities, and agreed to hold NCO harmless in connection with the Transferred Assets[1] and the OSI Assumed Liabilities.[2] NCO 00624-25.

Under the terms of a stock purchase agreement dated June, 2014, which closed October 31, 2014, OSI and Expert Global Solutions transferred and sold all shares of TSI stock to Aston Acquisition Holding Corporation. Phariss Dec., Exhibit 3, Exhibit 4.

### III.     STANDARD OF REVIEW

Rule 25(c) of the Federal Rules of Civil Procedure permits a court to substitute a successor-in-interest as a defendant in a pending litigation. Fed.R.Civ.P. 25(c); 7C CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1958 (3d ed.). Rule 25(c) states that: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed.R.Civ.P. 25(c). Whether or not to permit substitution falls within this Court's discretion. *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985); *Panther Pumps &*

---

[1] The term "Transferred Assets" was defined as "…the Assets and the OSI Assets." NCO 00624. In turn, the term Assets was defined as "those assets set forth on Schedule I-A attached hereto," while the term OSI Assets was defined as including "those assets set forth on Schedule 1-B attached hereto, including the Assets." NCO 00623. Schedule I-A, ¶ 2 identified the following transferred assets " owned by EGS, any Transferring Party or any of their respective Subsidiaries (other than OSI) (collectively, the 'EGS Group'):… "All customer contracts relating to the …Attorney Network Services business segment…." NCO 00638. Schedule I-B identified the following "OSI Assets:" All customer contracts of OSI relating to the … Attorney Network Services business segment…." NCO 00640.

[2] The term "OSI Assumed Liabilities" is defined as "all Liabilities of OSI, including the Assumed Liabilities, solely to the extent arising from or relating to the OSI Assets, irrespective of whether such Liabilities arise before, on or after the Closing Date." NCO 00623. "Assumed Liabilities" was defined in paragraph 3(b). Id. Paragraph 3(b) stated: (b) Assumption of Liabilities. Effective at the time of the Closing and subject to the terms and conditions set forth in this Agreement and the occurrence of the Conditions Satisfaction Date. OSI hereby assumes and becomes responsible for all Liabilities of each Transferring Party ( other than OSI) solely to the extent arising from or relating to the Assets sold by such Transferring Party hereunder and shall pay, perform and discharge when due such Liabilities, irrespective of whether such Liabilities arise before on or after the Closing Date (the 'Assumed Liabilities')." NCO 00625.

3

*Equip. Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 23 (7th Cir. 1977). Substantive law provides the measure for whether an "interest" relevant to the action was transferred. *Valerio v. Total Taxi Repair & Body Shop, LLC*, No. 12 C 9985, 2015 WL 3962573, at *2 (N.D. Ill. June 25, 2015)(citing *Sullivan v. Running Waters Irrigation, Inc.*, 739 F.3d 354, 357 (7th Cir. 2014)).

Rule 21 provides that "the court may at any time, on just terms, add or drop a party." Fed. R.Civ.P. 21. "Rule 21 authorizes the addition of a person who, for whatever reason, has not been made a party and whose presence as a party is deemed to be necessary or desirable." 7 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1683 (3d ed.). See also *Thor Power Tool Co. v. Weintraub*, 791 F.2d 579, 583 (7th Cir. 1986)("Rule 21 was adopted 'to obviate the harsh common law adherence to technical rules of joinder…'")(quoting *Halladay v. Verschoor*, 381 F.2d 100, 108 (8th Cir.1967)). In the event the Court were to find EGS is not the proper party Defendant in this action, '[t]he proper remedy is a timely motion to drop the improper party. *Celanese Corp. of Am. v. Vandalia Warehouse Corp.*, 424 F.2d 1176, 1179 (7th Cir. 1970).

A small number of courts have evaluated FDCPA claims involving successor liability. *Edwards v. Ocwen Loan Servicing, LLC,* No. 1:13-CV-00709 (APM), 2015 WL 9484458, at *9 (D.D.C. Dec. 29, 2015)(finding grounds for successor liability lacking); *Winiecki v. Creditors Interchange Receivable Mgmt., LLC,* No. 13 C 3461, 2015 WL 6870105, at *6 (N.D. Ill. Nov. 4, 2015)(finding impleaded third party liable for FDCPA violation under successor liability theory); *Schmid v. Transworld Sys., Inc.,* No. 15 C 02212, 2015 WL 5181922, at *2 (N.D. Ill. Sept. 4, 2015)(finding bare allegations in pleading insufficient to support successor liability); *Shakur v. Creditors Interchange*, No. CV1403149SJOPLAX, 2015 WL 9690319, at *3 (C.D. Cal. Mar. 11, 2015)(finding lack of evidence to support claim of successor liability).

In each of the foregoing cases, the Court evaluated the argument for successor liability as measured by the operative substantive law standards. For example, in *Winiecki*, the operative contract contained a New York choice of law clause, and the Court applied the substantive law of New York to the question of successor liability as articulated in *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006). *Winiecki,* 2015 WL 6870105, at *5. See also *Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. 168, 182, n. 5 (1973)(under the common law, "the general rule of corporate liability is that, when a corporation sells all of its assets to another, the latter is not responsible for the seller's debts or liabilities, except where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a continuation of the selling corporation; or (3) the transaction is entered into to escape liability.").

The *Winiecki* Court found that by virtue of an asset purchase agreement, Mercantile Adjustment Bureau, LLC ("Mercantile"), a successor debt collector "purchased certain assets and assumed certain liabilities of" Creditors Interchange Receivable Management, LLC ("Creditors"), which was no longer a going concern. *Winiecki*, 2015 WL 6870105, at *2. Creditors had agreed to indemnify and hold eCAST Settlement Corporation harmless in connection with its collection undertaken on behalf of eCAST under the terms of a servicing agreement. *Id.* Creditors did not defend the action, was in default, and eCAST settled the action. *Id*. at 4. After doing so, eCAST impleaded the buyer, Mercantile, in an effort to enforce the obligation to indemnify, under the doctrine of successor liability. *Id.* Reviewing the unambiguous contracts, the Court found the agreements demonstrated "that Mercantile expressly assumed the Servicing Agreement, including the obligation to indemnify," and that "the Asset Purchase Agreement also demonstrates that Mercantile expressly assumed certain liabilities of Creditors... [which extended to the Winiecki liability]." *Id*. at *5-6.

5

The Seventh Circuit has recognized that such contractual obligations to assume the liability of a seller are enforceable by their terms, and the common law doctrine of successor liability, which looks to the buyer who assumed liabilities, are in accord with Congressional intent, albeit none have addressed the issue in the context of claims under the FDCPA. *Centerpoint Energy Servs., Inc. v. Halim*, 743 F.3d 503, 507 (7th Cir. 2014); *N. Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 650 (7th Cir. 1998) *overruled on other grounds by Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983 (7th Cir. 2010); *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995)(citing *Howard Johnson Co., Inc. v. Detroit Local Joint Exec. Bd.,* 417 U.S. 249, 256 (1974)). One factor courts consider in imposing successor liability is whether the successor is a mere continuation or a reorganization of another entity, and when the business or property of the old corporation has been absorbed by the new, the latter is responsible for the debts or liabilities of the former. See 15 FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS §§ 7113-7118; 7124.50; *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1325-27 (7th Cir. 1990).

**IV.     ARGUMENT**

Here, the restructuring agreement, Exhibit 1, divested NCO/EGS of its interest in the Attorney Network line of business in October of 2013, and TSI assumed the associated liabilities for the Attorney Network line of business. Phariss Dec. ¶ 9. TSI remained an EGS company until the following year, when in October 31, 2014, the stock in TSI was sold and transferred to Aston Acquisition Corporation obtained ownership of TSI. Phariss Dec. ¶ 21. Any remaining interest held by EGS in the Attorney Network line of business was transferred to TSI October 31, 2014. Phariss Dec. ¶¶ 9, 14, 21.

Measured from the date of the initial Restructuring Agreement in October of 2013, TSI assumed the associated liabilities for the Attorney Network line of business prior to the date when all events related to Plaintiffs' claims took place. The three state court lawsuits filed against Plaintiffs Marquez and Garriga were filed November 14, 2013, and the lawsuit against Plaintiff Russell was filed December 27, 2013. Doc. No. 67, ¶¶ 20, 22.

Even with respect to the putative class, defined as concerning complaints filed on or after February 3, 2013 and prior to February 23, 2014, and thereby straddles the date of the restructuring agreement, TSI assumed all liabilities associated with the Attorney Network line of business, "irrespective of whether such Liabilities arise before, on or after the Closing Date." NCO 00452, 00625.

The relevant contracts[3] each contained New York choice of law clauses. NCO 00618 ¶ 11.17; NCO 0627, ¶ 14(a). Under New York law, while the general rule is that a corporate buyer is ordinarily not liable for the seller's liabilities, there are four noted exceptions: "the successor expressly or impliedly agrees to assume them; the transaction may be viewed as a de facto merger or consolidation; the successor is a mere continuation of the predecessor; or the transaction is fraudulent." *Lyons v. Rienzi & Sons, Inc.*, 863 F. Supp. 2d 213, 223 (E.D.N.Y. 2012), on reconsideration in part, No. 09-CV-4253, 2012 WL 1339442 (E.D.N.Y. Apr. 17, 2012). See generally George W. Kuney, *A Taxonomy and Evaluation of Successor Liability*, 6 Fla. St. U. Bus. L. Rev. 9 (2007); John H. Matheson, *Successor Liability*, 96 Minn. L. Rev. 371 (Dec. 2011); George W. Kuney, *Successor Liability in New York*, 79-SEP N.Y. St. B.J. 22, 23 (Sept. 2007).

---

[3] The October 31, 2013 restructuring agreement contained a Delaware choice of law clause. NCO 00454 ¶ 12(a). As to Delaware law, the standard for successor liability is the same. *See Fehl v. S.W.C. Corp.*, D.Del., 433 F.Supp. 939, 945 (1977).

Here, it is evident that any liability arising from the conduct alleged in the SAC to have been undertaken by NCO, was expressly assumed by TSI. NCO 00452, 00625. Consequently, TSI should be substituted as a party Defendant for EGS.

Moreover, this is not a mere academic question, and it does pertain to an emergent issue in pending discovery and in connection with class certification. In this matter, Plaintiffs have requested documents from EGS concerning its net worth, for the purposes of establishing the threshold amount of available class damages.

The undersigned is not aware of any case law interpreting 15 U.S.C. § 1692k(a)(2)(B) in a case like this, involving the sale of a business, where the buyer assumed all liabilities arising from the sale, that supports the view that the seller's net worth, not the buyer's net worth, is the relevant consideration for determining class damages.

As the Court in *Janetos* remarked, 15 U.S.C. § 1692k imposes liability on "any debt collector who fails to comply." *Janetos v. Fulton Friedman & Gullace, LLP*, No. 12 C 1473, 2016 WL 7240750, at *2 (N.D. Ill. Dec. 15, 2016). Yet, despite the Seventh Circuit's view that both the debt collector *committing* a violation and a debt collector who engaged another to collect debt on its behalf can be subjected to liability under § 1692k, the Seventh Circuit has not provided any guidance on whose net worth is to be used to assess the award to a putative class when passing on a motion for class certification. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016).

Even assuming arguendo that the entities involved in the violation at issue were WPR an NCO (not TSI), it does not illuminate or provide an answer to the question here - whether the seller or the buyer's net worth is the operative benchmark used to evaluate available class damages.

Plaintiffs' counsel is expected to argue that it would be inequitable or unjust to look to the buyer's net worth in this case because EGS' net worth is substantial, whereas TSI's is not, and the same equitable considerations that led the Seventh Circuit to reverse and remand in *Janetos* justify holding EGS to account because "it is fair and consistent with the Act to require a debt collector who is independently obliged to comply with the Act to monitor the actions of those it enlists to collect debts on its behalf." *Janetos*, 825 F.3d 317, 325.

In truth, the implication from *Janetos*, however, compels the opposite conclusion here. Under Plaintiffs' theory, the debt collector who was obligated to monitor the actions of Weinstein, Pinson and Riley, was NCO Financial Systems – not EGS, and not TSI. But, as the facts show, the Attorney Network line of business became and asset and the liability of TSI in October, 2013, *before* the complaints against the Plaintiffs were filed in state court. Thus, even assuming Plaintiffs can show some basis for liability for the conduct of Weinstein, the entity that owned and controlled the attorney network in October of 2013, was TSI, not NCO.

Moreover, the issue concerning this motion for substitution is not whether EGS or TSI should be let off the hook for misconduct, but the tune of the penalty for the misconduct alleged under § 1692k(a)(2)(B). In other words, because the measure of liability (if any) to be borne by TSI (or EGS) is "the lesser of $500,000, or 1 per centum of the net worth of the debt collector," § 1692k(a)(2)(B), should TSI's net worth be the measure of its liability, or that of EGS?

As the Seventh Circuit remarked in *Sanders v. Jackson*, Congress included an alternative formulation of statutory class damages in 15 U.S.C. § 1692k(a)(2)(B) to ensure that a debt collector would not be forced into bankruptcy by a punitive statutory penalty that it could not afford to pay:

> [T]he net worth clause is designed to address a problem often associated with fixed monetary penalties: they sometimes penalize smaller companies too harshly but are also insufficiently punitive for larger businesses. *See Kemezy v. Peters,* 79 F.3d 33, 35 (7th Cir. 1996). Thus, by making the extent of the penalty directly proportional to a percentage of

9

> the defendant's net worth, Congress hoped that punishment might be meted out according to a business's ability to absorb the penalty. *See id.; Zazú Designs v. L'Oréal, S.A.*, 979 F.2d 499, 508 (7th Cir. 1992) (discussing the rationale behind fixing monetary penalties according to the defendant's wealth or lack thereof). The key aspect of this net worth provision is not its punitive nature, as Sanders argues, but a recognition that an award of statutory punitive damages may exceed a company's ability to pay and thereby force it into bankruptcy. *Kemezy*, 79 F.3d at 35. Thus, we agree with the Fifth Circuit that the primary purpose of the net worth provision is a protective one. It ensures that defendants are not forced to liquidate their companies in order to satisfy an award of punitive damages. *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 118 (5th Cir.1975) (identical provision in TILA was designed to protect businesses from catastrophic damage awards).

*Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000).

Granting substitution here will be consistent with Congressional intent, because it will ensure that if any liability is found for statutory damages on the part of EGS or TSI, is commensurate with TSI's ability to pay any such damages.

Consider the perverse result that Plaintiffs seek here in opposing this motion. Assuming the lesser of 1% or $500,000 for EGS' net worth here were $500,000, and for TSI, the lesser were closer to $5,000, imposing liability based on the net worth of EGS would lead to the inequitable and ruinous result that Congress sought to prevent, by maximizing (rather than minimizing) the impact of a statutory damage award, which will ultimately be borne by TSI (because TSI has contractually agreed to indemnify EGS for the liability at issue), running counter to the aims of Congress identified in *Sanders v. Jackson, supra*.

### V.     ALTERNATIVE MOTION TO JOIN A NECESSARY PARTY

Rule 12(b)(7) provides grounds for dismissal include failure to join a party under Rule 19. In turn, Rule 19(a) provides:

> **(a) Persons Required to Be Joined if Feasible.**
>
> **(1) *Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

>**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
>
>**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>**(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>
>**(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
>**(2) *Joinder by Court Order.*** If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.
>
>**(3) *Venue.*** If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

As the Seventh Circuit has explained:

>The purpose of Rule 19 under the Federal Rules of Civil Procedure is "to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir.1990). … Joinder under Rule 19 is a two-step inquiry: First, the court must determine whether a party is one that should be joined if feasible—called, in the old days, a "necessary party." Fed.R.Civ.P. 19(a)[.]

*Davis Companies v. Emerald Casino, Inc.,* 268 F.3d 477, 481 (7th Cir. 2001)(internal citation omitted). In addressing whether joinder is feasible, the Court is to consider "(1) whether complete relief can be accorded without joinder, (2) whether … [the absent party's] ability to protect his interest will be impaired, and (3) whether the existing parties will be subjected to a substantial risk of multiple or inconsistent obligations unless he is joined." *Id*. The relative rights of the parties are considered under state law. *Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993).

First, there is no basis for arguing that joinder of TSI is not feasible because TSI is not subject to service of process or because its joinder will deprive the court of subject-matter jurisdiction. TSI maintains a registered agent for service of process in Illinois. See http://www.cyberdriveillinois.com/departments/business_services/corp.html; *see also* Exhibit 5.

11

As this case is premised on federal question jurisdiction, joinder of TSI would not deprive the Court of subject matter jurisdiction.

Second, as in *Winiecki v. Creditors Interchange Receivable Mgmt., LLC, supra*, complete relief cannot be obtained without the joinder of TSI, as TSI has assumed the liability of NCO as it concerns the Attorney Network, and has agreed to indemnify and hold EGS harmless.

Third, as explained above, if TSI is not made a party, it could be asked to bear liability based in the net worth of EGS, rather than its own net worth, which has the potential to subject TSI to punitive statutory damages that it cannot bear, creating the risk that in the absence of TSI as a party, its ability to protect its interests would be impaired.

Fourth, existing parties will be subjected to a substantial risk of multiple or inconsistent obligations unless TSI is joined, because the operative question as to whose net worth should be used to determine the ceiling for statutory class damages cannot be decided without referring to TSI's role in the attorney network during 2013 and 2014. The Court will likely be asked to address whether NCO (EGS) or TSI exercised supervision over WPR's collection activities to assess the propriety of class damages. *Janetos, supra.* Plaintiffs have requested net worth information in discovery, and it is unclear whether EGS is obligated to produce TSI's financial statements or its own, because as set forth above, it was TSI and not NCO that owned the Attorney Network in the latter part of 2013. Further, while co-defendant WPR was at one time part of the NCO Attorney Network, by virtue of NCO's contract with WPR, the right of contractual indemnity for the WPR conduct at issue would inure to the benefit of TSI by virtue of its acquisition of the Attorney Network contract and assets. Without the joinder of TSI, the existing parties face the risk of a joint and several judgment, which would be inconsistent with the recognition of successor liability

principles identified above, and has the potential to create a ceiling for statutory class damages much higher than the Court could find applicable, if premised on TSI's net worth, not EGS.'

Finally, TSI, by and through its in-house counsel, has consented to be brought into this action as a party defendant and to be substituted in this action for EGS.

## VI. CONCLUSION

For all the foregoing reasons, EGS Financial Care, Inc. respectfully prays that the Court substitute Transworld Systems Inc. as a party Defendant to this action in place of EGS, and drop EGS as a party. In the alternative, EGS prays that the Court order the joinder of Transworld Systems Inc. as a necessary party.

Respectfully submitted,

/s/Michael D. Slodov
Michael D. Slodov (Ohio SCR #0051678)
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLC
15 E. Summit Street
Chagrin Falls, OH 44022-2709
(440) 318-1073
(fax) (216) 359-0049
(email) mslodov@sessions.legal

Morgan I. Marcus, Esq.
Sessions Fishman Nathan & Israel, LLC
120 South LaSalle Street, Suite 1960
Chicago, Illinois 60603
(312) 578-0990
Attorneys for Defendant,
EGS Financial Care, Inc.
(formerly known as NCO Financial Systems, Inc.)

13