**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERICK MARQUEZ, IRAIDA GARRIGA, formerly known as IRAIDA ORTIZ, and DORIS RUSSELL, on behalf of plaintiffs and a class, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 14 C 739 |
| WEINSTEIN, PINSON & RILEY, P.S., EVAN MOSCOV, and EGS FINANCIAL CARE, INC., formerly known as NCO FINANCIAL SYSTEMS, INC., | ) ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The plaintiffs, Erick Marquez, Iraida Garriga (formerly Ortiz), and Doris Russell, seek to certify a class under the Fair Debt Collection Practices Act ("FDCPA"). The defendants, Evan Moscov; his law firm, Weinstein, Pinson & Riley, P.S. ("WPR"); and their client, EGS Financial Care, Inc. (formerly NCO Financial Systems, Inc.) (hereinafter "NCO") contend that certification is improper because the plaintiffs lack standing to assert their FDCPA claims and have failed to meet the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). Because all three plaintiffs have standing to sue and satisfy the strictures of Rule 23, the Court grants the plaintiffs' motion for class certification with a modified class definition.

## BACKGROUND

This litigation arises out of efforts to collect student loan debts. In late 2013, WPR, on behalf of its client NCO, filed suits in Illinois state court seeking repayment of student debt owed by Marquez, Garriga, and Russell. In November 2013, WPR filed three debt collection

complaints against Garriga and Marquez (who are mother and son) for the recovery of over $75,000 in unpaid debt. (Pls.' Renewed Mot. for Class Cert., App. A-C.) The following month, WPR filed a debt collection complaint against Russell seeking to recover over $4,000 under her student loan agreement. (*Id.*, App. D.)

The four complaints are virtually identical and contain language common for collection cases; they recite the loan agreement and outstanding principal, and allege the breach of that agreement and the corresponding damages. Following those allegations, the complaints include a paragraph ("Paragraph 12") with the following language:

> Pursuant to 11 U.S.C. §1692g(a) [sic], [Marquez, Garriga, and Russell are] informed that the undersigned law firm is acting on behalf of [NCO[1]] to collect the debt and that the debt referenced in this suit will be assumed to be valid and correct if not disputed in whole or in part within thirty (30) days from the date hereof.

A prayer for relief and signature block containing Moscov's signature and a WPR address follow Paragraph 12 in each complaint. (*Id.*, App. A-D.)

The plaintiffs filed this action in early 2014, claiming that Paragraph 12 violated Section 1692e of the FDCPA, which bars a debt collector from using any false, deceptive, or misleading representations in connection with the collection of any debt. The plaintiffs also sought to certify a class of Illinois consumers against whom the defendants filed debt collection complaints that included Paragraph 12. In relief, the plaintiffs sought only statutory damages (as well as attorney's fees and costs) on behalf of themselves and the class as a result of the statutory violation. None of the plaintiffs asserted a claim for actual damages.

---

[1] Although "National Collegiate Student Loan Trusts" is the plaintiff in each of the complaints, (Pls.' Mot., App. A-D.), the collection actions were filed on behalf of NCO, who was the account servicer for the trusts, (*see id.*, App. T at 9, App. U. at 5, App. V at 7-8).

In October 2015, the Court dismissed the plaintiffs' class complaint with prejudice for failure to state a claim under Rule 12(b)(6) after determining that Paragraph 12 was not misleading under the FDCPA. On appeal, the Seventh Circuit found Paragraph 12 to have substantially greater potential for confusing unsophisticated consumers than did this Court. It held that Paragraph 12 was "plainly deceptive and misleading to an unsophisticated consumer as a matter of law" and remanded the case for further proceedings. *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 815 (7th Cir. 2016). The plaintiffs now seek to certify their class of Illinois consumers who were subjected to the same deceptive and misleading language.

## ANALYSIS

Specifically, the plaintiffs wish to certify the following class:

(a) all individuals in Illinois, (b) against whom WPR filed a complaint, (c) containing the language in paragraph 12 of Appendices A-D [in the Second Amended Complaint], (d) which complaint was filed on or after February 3, 2013 and prior to February 23, 2014.

The defendants argue that the class should not be certified for several reasons. At the outset, they contend that the plaintiffs lack standing to sue under the FDCPA—let alone on behalf of a class—because Marquez, Garriga, and Russell did not suffer any concrete harm as a result of Paragraph 12. Moreover, the defendants claim that even if all three have standing, they cannot establish commonality, typicality, or adequacy under Rule 23(a). Finally, the defendants argue that because individual issues predominate and a class action is not the superior method for revolving this lawsuit, the plaintiffs' motion fails under Rule 23(b)(3). The Court rejects each of these arguments and finds that the plaintiffs have met their burden to proceed as a class.

## I.  STANDING

Before turning to the merits of the motion, the Court must first be assured that the plaintiffs have standing to maintain an action under the FDCPA. Standing is a threshold

jurisdictional issue that requires the plaintiffs to show that they have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendants, and (3) that is likely to be redressed by a favorable judicial decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). These requirements extend not only to individual plaintiffs, but to class representatives as well. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured . . . .") (internal quotation marks and citation omitted); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself of any other member of the class."). Yet, only one named plaintiff need establish a sufficient injury for the Court to turn to the certification issue. *See Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009) ("[A]s long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied.") (citations omitted).

The defendants contend that the plaintiffs lack standing to sue because they have not suffered an injury in fact. (NCO's Mem. in Opp'n to Renewed Mot. for Class Cert. 5-7, ECF No. 136; Moscov & WPR's Resp. in Opp'n to Renewed Mot. for Class Cert. 3-4, ECF No. 143 (hereinafter "Atty Defs.' Opp'n").) An injury in fact arises whenever a plaintiff has suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). The defendants argue that although the plaintiffs can establish a violation of Section 1692e, that violation amounts to a "bare procedural harm" following the Supreme Court's decision in *Spokeo, Inc. v. Robins*, — U.S. —, 136 S. Ct.

1540, 1549 (2016). More precisely, the defendants believe that because the plaintiffs either did not read, were not actually misled by, or at the very least, were not in danger of defaulting on their debts as a result of Paragraph 12 (either because they were not served with the complaint or because they retained counsel and moved to dismiss it), the statutory violation did not give rise to a concrete harm. (NCO's Opp'n 7-8, ECF No. 136; Atty Defs.' Opp'n 3-4, ECF No. 143.) The Court disagrees.

As an initial matter, the defendants make unduly short shrift of *Spokeo*. It is true that *Spokeo* held that even lawsuits based on statutory violations require proof of a concrete injury and that concreteness is not automatically met by citing a statute that grants a right and authorizes a suit to vindicate that right. 136 S. Ct. at 1549-50 (recognizing that some "procedural violation[s]" are "divorced from any concrete harm"). Yet, *Spokeo* also confirmed that in some cases, a violation of a statutory right does amount to a concrete harm, even where that harm is intangible. *Id.* at 1549 ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact."). The Seventh Circuit has since interpreted *Spokeo* to mean that a statutory violation alone gives rise to a concrete harm where the "violation present[s] an appreciable risk of harm to the underlying concrete interest that Congress sought to protect by enacting the statute" at issue. *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (internal quotation marks omitted) (citing *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016); *Spokeo*, 136 S. Ct. at 1549-50). It is in those cases that plaintiffs "need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549.

This is a case in which the plaintiffs need not establish harm beyond what Congress has identified. The FDCPA undoubtedly provides consumers with a concrete interest in receiving

accurate information about their debts. In enacting the FDCPA, Congress concluded that "many" debt collectors use "abusive, deceptive, and unfair debt collection practices" and that "[e]xisting laws and procedures . . . are inadequate to protect consumers" from those abuses. 15 U.S.C. § 1692(a)-(b); *see also Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *4 (N.D. Ill. July 11, 2016). Congress sought to curb "the unscrupulous antics of debt collectors," *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citation omitted), by arming debtors with accurate information about their debts, *see Bernal v. NRA Group, LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016). Moreover, Section 1692e is a critical component for protecting that interest. It affords consumers the ability to fully avail themselves of their legal rights by prohibiting debt collectors from using any false, deceptive, or misleading means in the course of collecting a debt. *Papetti v. Does 1-25*, No. 16-2582-CV, 2017 WL 2304227, at *2 (2d Cir. May 26, 2017); 15 U.S.C. § 1692e. Thus, the defendants' violation of Section 1692e—in that they filed debt collection complaints that were misleading "as to the proper timing to respond to the complaint and as to the manner of response," *Marquez*, 836 F.3d at 815—gives rise to a concrete harm sufficient to establish an injury in fact.

Several other courts have addressed *Spokeo* arguments in the context of Section 1692e and reached the same result. The Second Circuit soundly rejected an almost identical "bare procedural" challenge against a consumer who claimed a debt collector violated the statute by sending him a communication that contained misleading representations. *Papetti*, 2017 WL 2304227, at *2. The Court found that because "there can be no dispute that Section[] 1692e . . . protect[s] an individual's concrete interest[]" in being free from "abusive debt collection practices," the debt collector's alleged violation alone "entail[ed] the concrete injury necessary for standing." *Id.* (internal quotation marks and citations omitted). A number of other in-circuit

courts have adhered to this approach as well. *See, e.g.*, *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2017 WL 1427070, at *1, *4 (N.D. Ill. Apr. 21, 2017) (finding allegation that debt collector sent misleading dunning letter in violation of Section 1692e was sufficient to establish concrete harm because "injury falls squarely within the ambit of what Congress gave consumers in the FDCPA") (citation omitted); *Bernal*, 318 F.R.D. at 72 (same); *Saenz v. Buckeye Check Cashing of Illinois*, No. 16 C 6052, 2016 WL 5080747, at *2 (N.D. Ill. Sept. 20, 2016) ("Congress gave consumers a legally protected interest in certain information about debts, and made the deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.").

The Seventh Circuit has not yet addressed a *Spokeo* challenge under the FDCPA; nonetheless, two of its recent standing decisions merit consideration. In *Meyers*, the court found that a customer lacked standing to bring a class action suit against a restaurant that violated the Fair Credit Reporting Act ("FCRA") by failing to truncate credit card expiration dates on its receipts. 843 F.3d at 729. It held that because no one else ever saw the customer's receipt, the expiration date could not "have increased the risk that [his] identity would be compromised," and thus, did not give rise to a concrete harm. *Id.* at 727. Similarly, in *Groshek*, the court determined that a job applicant had no standing to pursue a class action against employers who allegedly violated the standalone disclosure requirements of the FCRA. 865 F.3d at 889. The Court found that the violation, if true, did not give rise to an injury in fact because the statute at issue did not protect the applicant from "the kind of harm he claims to have suffered, *i.e.*, receipt of non-compliant disclosures." *Id.* at 888. Instead, the statute's principal aim is to protect applicants from unwittingly agreeing to have their credit reports run, a fact that was not at issue based on the allegations of the complaint. *Id*. at 888-89.

Although *Meyers* and *Groshek* share factual similarities to this case in that they involve named plaintiffs alleging harm based solely on statutory violations, both are distinguishable. In contrast to *Meyers*, there is no concern here that the defendants' FDCPA violation failed to present a risk of harm to the Act's goal of ensuring consumers have accurate debt-related information. Indeed, the violation ***directly*** deprived the plaintiffs of that interest by providing misleading information about the timing and manner with which to respond to their debt collection complaints. Although that violation may not have resulted in "tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete." *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994-95 (11th Cir. 2016) (citing *Spokeo*, 136 S. Ct. at 1549). And, unlike the allegations in *Groshek*, the plaintiffs have established exactly the type of harm that Section 1692e protects against: a deprivation of accurate, non-misleading information about how to dispute their debts.

This case instead is reminiscent of *Havens Realty Corp. v. Coleman*, where a tester-plaintiff alleged that the defendant falsely told her that it had no apartments available for rent on several occasions. 455 U.S. 363, 368 (1982). Even though the tester did not intend to rent an apartment, and was merely posing as a renter to collect evidence of a violation of the Fair Housing Act ("FHA"), the Court determined she had standing to sue. *Id.* at 374. The Court reasoned that because the FHA "establishes an enforceable right to truthful information concerning the availability of housing, . . . [a] tester who has been the object of a misrepresentation made unlawful under [the FHA] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." *Id.* at 373-74.

Just as it did not matter to the standing inquiry in *Havens* that the tester was not actually deceived by the information provided, it does not matter here that the plaintiffs were not actually confused by Paragraph 12. Like the FHA, which establishes an enforceable right to truthful information concerning the availability of housing, the FDCPA establishes an enforceable right to accurate information about consumer debts. And because the Seventh Circuit has determined that Paragraph 12 was ***not*** accurate, but rather misleading as a matter of law, it follows that the plaintiffs have demonstrated that they "have been the object of a misrepresentation made unlawful" under the FDCPA. Therefore, the plaintiffs suffered concrete harm in precisely the form the statue guards against and, as a result, have standing to assert their FDCPA claims.[2]

## II.     Class Certification

Turning to the merits of the motion, the plaintiffs must meet four criteria under Rule 23(a) to certify a class action: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011). Moreover, because the plaintiffs move for certification under Rule 23(b)(3), they also must demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Finally, the plaintiffs have an inherent obligation to show that membership in the class is readily ascertainable. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (citations omitted).

---

[2] Having determined that the plaintiffs suffered a concrete harm, the remaining standing elements are easily satisfied. The defendants filed debt collection complaints against Marquez, Garriga, and Russell, (Pls.' Mot., App. A-D); thus, their injury was actual, because it already occurred, and particularized, because it "affect[ed] them in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. Moreover, the informational harm resulted directly from the defendants filing the misleading debt collection complaints and can be redressed by awarding the plaintiffs statutory damages. 15 U.S.C. § 1692k(a)(2). Thus, all three plaintiffs have standing to sue under the FDCPA.

The Court must conduct a rigorous analysis to determine whether the plaintiffs have satisfied these requirements by a preponderance of the evidence. *Messner v. Northshort Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (stating that the Court "should make whatever factual and legal inquiries are necessary under Rule 23"). The defendants argue that the plaintiffs have failed to meet the commonality, typicality, and adequacy prongs under Rule 23(a), as well as the predominance and superiority criteria under Rule 23(b)(3). The Court disagrees and finds that the plaintiffs have carried their burden to certify the proposed class.

A.      **Rule 23(a)**

1.      **Numerosity**

Rule 23(a)'s initial requirement is numerosity: the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no "magic number" of class members for numerosity purposes, when a class reaches forty, joinder is typically considered impracticable. *See, e.g.*, *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (finding that proposed class of forty was "a sufficiently large group to satisfy Rule 23(a)"); *Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008). The plaintiffs contend that the proposed class is over 100 individuals, as Moscov and WPR filed "several hundred" form complaints containing Paragraph 12 in Cook County" and "hundreds more in other Illinois counties." (Pls.' Mot. 2-3, ECF No. 93.) In support, they submitted eleven form complaints containing Paragraph 12 filed against other Illinois consumers, along with a list of hundreds of other Illinois cases that Moscov and WPR filed on behalf of NCO during the class period. (*Id.*, App. G-S.) The defendants offer no objection to these figures. In fact, Moscov and WPR believe that the class size is likely closer to 900 members. (Atty Defs.'

Opp'n 10, ECF No. 143.) Because there is no dispute the proposed class includes hundreds of members, and the plaintiffs are not required to specify an exact number, *see Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (citation omitted), Rule 23(a)(1) is satisfied.

### 2. Commonality

The second requirement for certification is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not "demand that every member of the class have an identical claim." *Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011). Instead, it looks at whether the plaintiffs have raised at least one common question such "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350*; see also Spano*, 633 F.3d at 585 ("It is enough that there be one or more common questions of law or fact."). Commonality usually exists where the defendants have engaged "in standardized conduct towards members of the proposed class." *Keele*, 149 F.3d at 594 (citations omitted).

The defendants' challenge to commonality—as well as to predominance, typicality, and adequacy—is that not all class members received and responded to the debt collection complaints in the same fashion. They contend that some class members (like Marquez, but not Garriga or Russell) may not have been served with the complaint, while others may not have retained counsel and may have failed to respond to the complaint in a timely manner (in contrast to the named plaintiffs). (NCO's Opp'n 10-12, ECF No. 136.) The result of these discrepancies, the defendants argue, is that the class' claims are so "unique" that "commonality is lacking." (*Id.* at 11.) The Court is unpersuaded by this argument.

First, the defendants are merely repackaging their standing argument with a commonality label. Doing so does not make the argument more viable. As discussed above, the FDCPA vests

consumers with a concrete interest in receiving accurate information about their debts, the deprivation of which is a concrete harm. Because the named plaintiffs and the putative class members need not establish any additional harm beyond the defendants' statutory violation, their claims do not turn on whether they retained counsel or were served or answered the debt collection complaints. Those matters may implicate issues involving actual damages (which, again, are not at issue here in any event), but they do not diminish the commonality between the claims of the putative class members.

Second, this case involves exactly the type of standardized conduct contemplated under Rule 23(a)(1). *See Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008) ("The requisite common nucleus of operative fact exists in FDCPA claims when the controversy arises from a standard form debt collection letter.") (citations omitted). Here, the defendants filed a standard debt collection complaint against hundreds of Illinois consumers. (*See* Pls.' Mot., App. R-S.) The question common to all class members is whether Paragraph 12 of those complaints violated the FDCPA. Resolving that question resolves in "one stroke" an issue that "is central to the validity" of each class members' claim. *Dukes*, 564 U.S. at 350. Therefore, the plaintiffs have established commonality under Rule 23(a)(2).

### 3.    Typicality

Rule 23(a)'s third requirement is that the named plaintiffs' claims and defenses must be typical of those of the class. Fed. R. Civ. P. 23(a)(3). This inquiry centers on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Oshana*, 472 F.3d at 514 (citations omitted). The Seventh Circuit has established a two-prong test for typicality: the named plaintiffs' claims must (1) arise "from the same event, practice or course of conduct" as the class members' claims, and (2) "be based on the same legal theory." *Id.*

Both prongs are met here. The plaintiffs' claims are typical because they arise out of the same course of conduct as the class members' claims in that the defendants filed a standardized complaint against all of them. (*See* Pls.' Mot., App. A-D, G-S, ECF No. 93.) And the basis of all of their claims is that Paragraph 12 is misleading as a matter of law under Section 1692e. (Pls.' Mem. in Supp. of Renewed Mot. for Class Cert. 10, ECF No. 94.) The defendants try to refute typicality by raising the same argument underlying their attack against commonality: that there may be differences in how the class members received and responded to their complaints. (NCO's Opp'n 12-13, ECF No. 136.) But such differences do not change the fundamental nature of the claims here: that the defendants provided misleading information about how to dispute a debt. In any event, typicality "does not required *identical claims*," especially where, as here, the factual distinctions are immaterial. *Pierre*, 2017 WL 1427070, at *7 (citing *Keele*, 149 F.3d at 594). Moreover, typicality focuses on the actions of the defendants, not the plaintiffs, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (finding that courts must "look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)"); thus, whether the putative class members were actually confused by Paragraph 12, retained counsel, or failed to file an answer to their debt collection complaints has little bearing under Rule 23(a)(3). Therefore, the Court finds that the plaintiffs have satisfied the typicality requirement.

### 4.     Adequacy

The final requirement under Rule 23(a) is that the plaintiffs must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). There is no question that here they do. At the outset, the named plaintiffs do not have any interests that conflict with those of the rest of the class, *Rosario*, 963 F.2d at 1018 ("A class is not fairly and adequately represented if class members have antagonistic or conflicting claims."), as both the plaintiffs and the class seek

monetary damages under the FDCPA, *see Hale v. AFNI, Inc.*, 264 F.R.D. 402, 406 (2009) (finding interests aligned where plaintiffs and class all sought monetary damages under FDCPA).

The defendants argue that the plaintiffs' interests are not aligned because some class members may have suffered greater harm and may have claims for actual damages, in contrast to the named plaintiffs, who seek only statutory damages. (NCO's Opp'n 14-15, ECF No. 136; Atty Defs.' Opp'n 6-7, ECF No. 143.) But this argument misapprehends the plaintiff's class claim. The plaintiffs seek only statutory damages on behalf of themselves and the class; there are no claims for actual damages. (*See* Second Am. Compl. 12, ECF No. 67 ("Wherefore, the Court should enter judgment in favor of plaintiffs and the class and against defendants for: (1) Statutory damages . . . ; (2) Attorney's fees, litigation expenses and costs of suit; [and] (3) Such other and further relief as the Court deems proper."); Pls.' Reply in Supp. of Renewed Mot. for Class Cert. 18, ECF No. 147 (discussing predominance requirement and acknowledging that "Plaintiffs seek only statutory damages here, so individual questions of damages do not arise.").) Consequently, because there is no class-wide claim for actual damages, there cannot be a conflict among class members over who suffered actual damages. There is, moreover, no evidence in the record that a significant portion of the class would have claims for actual damages. And to the extent that any putative class members have claims for actual damages, "such cases can be adequately dealt with by providing a clear notice of the right to opt out, as required by Federal Rule of Civil Procedure 23(c)[(2)](B)." *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 393 (N.D. Ill. 2006); *see also Pierre*, 2017 WL 1427070, at *8 (rejecting similar adequacy argument and granting class action certification under FDCPA).

Further, the Court finds that the class representatives are sufficiently interested in the outcome of this case. *See Chapman v. Worldwide Asset Mgmt., LLC*, No. 04 C 7625, 2005 WL

2171168, at *4 (N.D. Ill. Aug. 30, 2005) (finding that "as long as a class representative[s'] interests do not conflict with those of the proposed class, [they] need only have a marginal familiarity with the facts of the case"). All three plaintiffs demonstrated a general knowledge of the case during their depositions, (*see* Pls.' Reply, App. 1-3, ECF No. 147), and the defendants offer no objection on that basis. Finally, the Court finds that class counsel is qualified, experienced, and generally able to conduct the case. *See Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). Counsel for the plaintiffs is experienced in consumer class action cases, including FDCPA cases, and have been appointed class counsel in several other cases in this district. (Pls.' Mot., App. F, ECF No. 93.) Therefore, the plaintiffs have established adequacy and, as a result, satisfy all of the strictures of Rule 23(a).

B.     **Rule 23(b)(3)**

1.     **Predominance**

Turning now to Rule 23(b)(3), the plaintiffs must demonstrate that "questions of law and fact common to class members predominate over any questions affecting only individual members" of the class. Fed. R. Civ. P. 23(b)(3). Predominance is a more stringent requirement than commonality under Rule 23(a)(2). *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). It "requires a qualitative assessment," *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013), regarding whether "common questions represent a significant aspect of [a] case and can be resolved for all members of [a] class in a single adjudication," *Messner*, 669 F.3d at 815. Even so, there is no question here that common questions predominate. The basis for this litigation is that the defendants filed form debt collection complaints against the class. Whether a class member is entitled to any relief revolves almost entirely around whether

Paragraph 12 in each of those complaints violated the FDCPA. Addressing this issue is not just significant to the litigation; it appears to be dispositive of the defendants' liability.[3]

The defendants contest that the common question of whether Paragraph 12 is misleading predominates for much of the same reason they challenge the plaintiffs' standing and ability to meet the requirements of Rule 23(a). More precisely, they assert that the Court will need to conduct "mini-trials" to determine which class members suffered concrete harm and/or actual damages based on the inclusion of Paragraph 12. (NCO's Opp'n 10-12, ECF No. 136; Atty Defs.' Opp'n 7-9, ECF No. 143.) Again, that argument fails for the simple reason that the plaintiffs have not asserted a claim for actual damages on behalf of the putative class.[4] The plaintiffs therefore can present class wide proof to establish harm; they need only submit as evidence the form debt collection complaint containing Paragraph 12 and a verified list of the consumers who had the complaint filed against them. Significantly, several in-circuit courts have found Rule 23(b)(3) satisfied in analogous cases where the common issue was whether debt collection letters sent by the defendants violated the FDCPA. *See, e.g.*, *Pierre*, 2017 WL 1427070, at *9-10; *Magee v. Portfolio Recovery Asscs., LLC*, No. 12 C 1624, 2015 WL 535859, at *3-4 (N.D. Ill. Feb. 5, 2015); *Quiroz*, 252 F.R.D. at 444; *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 419 (N.D. Ill. 2007). Accordingly, because this lawsuit centers around the defendants filing form complaints that violated the FDCPA, the plaintiffs have satisfied the predominance prong under Rule 23(b)(3).

---

[3] Although the Seventh Circuit has already determined that Paragraph 12 is misleading as a matter of law, it remains for the plaintiffs to prove (as opposed to merely allege) the other elements of liability as to each of the defendants (*i.e.*, that the defendants are debt collectors who used the misleading complaints in connection with the collection of debts).

[4] Even if some class members have claims for actual damages, that fact alone does not preclude a finding of predominance under Rule 23(b)(3). *Messner*, 669 F.3d at 815 ("It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3).") (citations omitted).

## 2. Superiority

Finally, the Court finds that a class action is the superior method "for fairly and efficiently adjudicating [this] controversy." Fed. R. Civ. P. 23(b)(3). A class action is superior where, as here, "the potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 520 (N.D. Ill. 2008) (citation omitted); *accord Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000) ("Because these are small-stakes cases, a class suit is the best, and perhaps only, way to proceed."); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("A class action solves [the small stakes] problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

Moscov and WPR argue that a class action is not the best way forward because putative class members have a greater incentive to pursue their claims individually than as a class. (Atty Defs.' Opp'n 9-11, ECF No. 143.) Setting aside claims for actual damage, on an individual basis, FDCPA plaintiffs are entitled to up to $1,000 in statutory damages and may recover attorney's fees and costs for meritorious suits. 15 U.S.C. § 1692k(a)(2). Conversely, the maximum recovery in a class action is "the lesser of $500,000 or 1 per centum of net worth of the debt collector." *Id.* In this case, Moscov and WPR estimate that class members would be able to recover only around $3.33 in damages against them if the class were successful.[5] Because that amount is *de minimis*, they argue, class treatment is inappropriate. (Atty Defs.' Opp'n 9-11, ECF No. 143.)

---

[5] Moscov and WPR reach this conclusion by assuming that the class will be around 900 members and by revealing that their net worth during the class period was around $300,000. (Atty Defs.' Opp'n 10, ECF No. 143.) They also contend, without support, that "net worth" under the FDCPA is determined on an individual-defendant level during the class period (in other words, they contend that their individual liability is capped based on their individual, not aggregate, net worth). Because the Court finds Moscov and WPR's *de minimis* argument fails even assuming their calculation is correct, it need not decide here whether "net worth" under

For starters, Moscov and WPR omit any potential recovery from NCO, whose net worth exceeds $50 million, and so would cause the $500,000 cap to apply regardless of their worth. (Pls.' Reply, App. 7.) That omission is glaring. Even if the Court were to accept Moscov and WPR's view that individual liability is capped by individual net worth, their argument that recovery would be *de minimis* must take into account all of class' potential sources of recovery. At $500,000, the potential recovery for 900 class members would be almost $560, an amount that is hardly *de minimis*, especially when considering that $1000 is the most that each class member could recover on their own (apart from actual damages).

There are a myriad other reasons to doubt Moscov and WPR's premise that class members will be better off pursuing their claims individually (beyond the skepticism appropriately applied to arguments made by defendants about how best to protect the interests of plaintiffs). First, their contention that class members would be better off on their own assumes that other members "will be aware of [their] rights, willing to subject [themselves] to all the burdens of suing and able to find an attorney willing to take [their] case." *Mace*, 109 F.3d at 344 (noting in dicta that such considerations "cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursing the FDCPA's objectives"). That assumption is made more problematic by the fact that many potential class members may have little time left before their claims would expire were the class not certified.[6]

_____

15 U.S.C. § 1692k(a)(2) must be considered on an individual or aggregate basis or whether it must be calculated as of the class period.

[6] The FDCPA's statute of limitations is one year. 15 U.S.C. § 1692k(d). The filing of this suit tolled the running of the statute for all putative class members. *Am. Pipe & Const. Co. v. Utah,* 414 U.S. 538, 554-60 (1974). But if the Court were to deny certification, the statute would begin to run again. *Lewis v. City of Chicago, Illinois*, 702 F.3d 958, 961 (7th Cir. 2012) ("A decision against certification, or a limited certification, ends the tolling and the time resumes running."). So, for example, a class member who learned on February 4, 2013—364 days before this suit was filed—that the defendants filed a complaint against him that included Paragraph 12,

It also assumes, without justification, that plaintiffs who prevail on individual claims are entitled to $1000 in statutory damages. Yet, the statute makes clear that $1000 is the *maximum* amount of statutory damages that plaintiffs may be awarded in individual suits, 15 U.S.C. § 1692k(a)(2); thus, the delta between statutory damages awarded in an individual action versus a class action is not necessarily the difference between the estimated payout to class members and $1000.

The availability of attorney's fees also does not lead to the conclusion that individual suits are more attractive. Attorney's fees are available for both successful individual and class actions, *id.*, but large fee awards are likely to be easier to justify in class actions, making them more attractive to the plaintiff's bar than individual claims, *see Mace*, 109 F. 3d at 344-45. And finally, with respect to the preferences of putative class members, it must be noted that any class members who wish to preserve their individual claims (whether because they deem the likely recovery of statutory damages for the class to be too meager, or want to preserve claims of actual damages, or both) would have the right to do so by opting out of the class. *See* Fed. R. Civ. P. 23(c)(2)(B). Thus, no class member who found the potential recovery afforded to the class in this case to be inadequate would be required to give up their claim.

Beyond the perspectives of the litigants, proceeding as a class also furthers the FDCPA's purpose of curbing debt collection abuses and judicial efficiency. Even if class members end up with little recovery, there is value to certifying a class to curtail the use of the misleading debt collection complaint at issue in this case. *See Spiegel v. Ashwood Fin., Inc.*, No. 16 C 1998, 2017 WL 443168, at *3 (S.D. Ind. Feb. 2, 2017) ("Even where recovery is *de minimus*, there is value in certifying a class to address potentially unlawful behavior that would not otherwise be

---

would have only one day left on the clock to file an individual claim. Class members like that, who would almost certainly lose their individual claims if the class were not certified, are unlikely to find proceeding individually more attractive.

addressed because the barriers to bringing suit are too high.") (internal quotation marks and citation omitted); *see also Pierre*, 2017 WL 1427070, at *10 (collecting in-circuit cases rejecting argument that *de minimis* recovery precludes finding of superiority). Moreover, rather than litigating the legality of the defendants' form complaint over 100 (or 900) times; *see Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1047 ("The picture of a federal district judge presiding over thousands of evidentiary hearings each involving a trivial amount of money is not a pretty one."), the Court can resolve these claims in a signal blow. Thus, a class action is the superior method for resolving this lawsuit and, as such, the plaintiffs have met Rule 23(b)(3).

### C. Objectively Identifiable Class

Finally, in addition to Rule 23, the Court must determine that the proposed class is sufficiently identifiable. *Oshana*, 472 F.3d at 513. That is, the class must be based on objective criteria that identify a particular group, harmed during a particular time frame, in a particular location, and in a particular way. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015). The plaintiffs' class definition meets this standard: it defines the class as the group of persons in Illinois against whom the defendants filed a form complaint that contained specifically misleading language during a year-long period. The parties readily can ascertain membership in the class through a review of state court dockets or the defendants' case files.

Nonetheless, the Court modifies the class definition to remove the reference to "Appendices A-D." In its place, the Court inserts the actual language of Paragraph 12 so that the definition need not reference the Second Amended Complaint. The class will be defined as:

(a) all individuals in Illinois; (b) against whom WPR filed a complaint; (c) containing the following language: "Pursuant to 11 [or 15] U.S.C § 1692g(a),[7]

---

[7] Paragraph 12 contains a typo that misidentifies the relevant statute. The paragraph presumably was intended to read: "Pursuant to *15* U.S.C. § 1692g(a) . . . ." All of the form debt collection complaints filed as exhibits contained this typo. Because it is possible that other class

Defendants are informed that the undersigned law firm is acting on behalf of Plaintiff to collect the debt and that the debt referenced in this suit will be assumed to be valid and correct if not disputed in whole or in part within thirty (30) days from the date hereof"; (d) which complaint was filed on or after February 3, 2013 and prior to February 23, 2014.[8]

Therefore, for the above reasons, the plaintiffs' motion for class certification is granted.

Dated: September 20, 2017

_____
John J. Tharp, Jr.
United States District Judge

---

members received complaints with the correct citation, however, the Court has added the bracketed reference to Title 15 as an alternative formulation that would also give rise to membership in the class.

[8] It is not apparent to the Court why the class period extends beyond one year, given the one-year limitations period for FDCPA claims. This question can be addressed further in connection with notice issues and is not material to the question of certification.