IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERICK MARQUEZ, IRAIDA GARRIGA, formerly known as Iraida Ortiz, and DORIS RUSSELL, on behalf of plaintiffs and a class,<br><br>  Plaintiffs,<br><br>  v.<br><br>WEINSTEIN, PINSON & RILEY, P.S., EVAN L. MOSCOV, and EGS FINANCIAL CARE, INC.,<br><br>  Defendants. | No. 14 CV 739<br><br>Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

In late 2013, the law firm Weinstein, Pinson & Riley, P.S. ("WPR") filed debt collection lawsuits in Illinois state court against Erick Marquez, Iraida Garriga (formerly Iraida Ortiz), and Doris Russell. These three individuals—the named plaintiffs in this action—subsequently brought this suit against WPR, as well as its client EGS Financial Care, Inc., which was then known as NCO Financial Systems, Inc.,[1] and Evan L. Moscov, an attorney at the firm. The plaintiffs sued under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, claiming that the state court complaints violated the act's prohibition on false and misleading representations made in connection with the collection of a debt. One of the defendants, NCO, has now moved for summary judgment, while the plaintiffs have moved for summary judgment against both WPR and NCO on the issue of liability. The plaintiffs' motion is granted and NCO's motion is denied.

---

[1] For ease of reference, the Court will refer to this entity as "NCO" throughout.

## BACKGROUND

Marquez, Garriga, and Russell all live in Chicago. Marquez and Russell each obtained loans in order to pay for their college educations; Garriga, who is Marquez's mother, was a co-signer on his loans. These loans were owed to various trusts known as the National Collegiate Student Loan Trusts. After the plaintiffs failed to make payments on each of these loans, the loans went into default.

In 2009, NCO entered into an agreement with First Marblehead Education Resources, Inc., an entity described in the contract as the "Special Servicer" to various trusts consisting of student loans. That contract was titled "Default Prevention and Collection Services Agreement." Ex. 10 at 1, ECF No. 193-1. In it, NCO represented that it provided "default prevention and collections services" to financial institutions, and it agreed that it would "use all reasonable and lawful efforts to collect the full amount due on all accounts placed with it by Special Servicer for collection." *Id.* at 1, 4. Three years later, NCO entered into a second agreement, in the form of an amendment to the first one, with U.S. Bank National Association, which had replaced First Marblehead as a "successor Special Servicer" for the trusts. Parties' Agreed Fact Statement in Supp. of Cross-Mots. for Summ. J. on Liability ("Agreed Facts") ¶¶ 23-24, ECF No. 193. In the amended agreement, NCO agreed to collect student loans held by the National Collegiate trusts that were "pre-default," meaning that they had been delinquent for less than 180 days, as well as those that were already in default. *See* Local Rule 56.1 Statement of Material Facts in Supp. of Pls.' Mot. for Summ. J. on Liability ("Pls.' Additional Facts") ¶ 3, ECF No. 194.

The amended agreement provided that, as one method of carrying out this collection, "NCO shall administer, manage and oversee collection litigation consistent with the terms of this Agreement." Ex. 11 at 7, ECF No. 193-1. NCO administered this collection litigation through a network consisting of more than 150 law firms to which NCO would refer debts for collection.

2

*See* Agreed Facts ¶ 32; Pls.' Additional Facts ¶ 5. One of these law firms was WPR. After applying to and being accepted into the network, WPR entered into an "Attorney Network Services Agreement" with NCO in March 2013. The contract provided that "NCO, on behalf of the Client, hereby retains you to collect monies owed Client on unpaid and delinquent accounts referred to you by NCO during the terms of this Agreement." Agreed Facts ¶ 44.

In November 2013, WPR filed three lawsuits against Marquez and Garriga, and the following month, it filed a fourth complaint against Russell. These four complaints, all of which were signed by Moscov, were all quite similar to each other. All four of these complaints were filed in the Circuit Court of Cook County, and all four sought to collect the individuals' unpaid student loan debts. The nominal plaintiff in each of these cases was one of the National Collegiate Student Loan Trusts. All of the complaints alleged that the individuals had entered into loan agreements and failed to make payments on them, thereby breaching the agreements. In addition, all of them included a paragraph ("Paragraph 12") that contained the following language:

> Pursuant to 11 U.S.C. §1692g(a) [*sic*], Defendants are informed that the undersigned law firm is acting on behalf of Plaintiff to collect the debt and that the debt referenced in this suit will be assumed to be valid and correct if not disputed in whole or in part within thirty (30) days from the date hereof.

App. A ¶ 12, ECF No. 67-1; App. B ¶ 12, ECF No. 67-2; App. C ¶ 12, ECF No. 67-3; App. D ¶ 12, ECF No. 67-4.

Marquez, Garriga, and Russell filed this lawsuit in February 2014, contending that Paragraph 12 violated § 1692e of the FDCPA, which provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." This Court dismissed the plaintiffs' complaint with prejudice in October 2015, determining that the plaintiffs had failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See generally* Order and Statement, ECF No. 79. On appeal, the Seventh Circuit

reversed. The Seventh Circuit held that the language in Paragraph 12 was "misleading and deceptive as a matter of law" and remanded the case for further proceedings. *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 815 (7th Cir. 2016). This Court subsequently granted the plaintiffs' motion for class certification and certified a class consisting of all individuals in Illinois against whom WPR filed a complaint between February 3, 2013, and February 23, 2014, that contained the contested language in Paragraph 12. *See* Mem. Op. and Order 20-21, ECF No. 159. Pointing to the Seventh Circuit's ruling, the plaintiffs have now moved for summary judgment against both WPR and NCO on the issue of liability.[2] NCO, however, has also moved for summary judgment. It argues that it is not a "debt collector" under the meaning of the FDCPA and that it is not liable for any violation of the statute that may have occurred.

## DISCUSSION

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court "construe[s] all facts and

---

[2] For reasons that defy easy discernment, the plaintiffs have not actually sought summary judgment against defendant Moscov. *See* Pls.' Mot. for Summ. J. on Liability 2-3, ECF No. 191 (seeking relief against WPR and NCO only); Mem. in Supp. of Pls.' Mot. for Summ. J. on Liability 1, ECF No. 192 (memo submitted in support of summary judgment against WPR and NCO). Equally befuddlingly, Moscov's counsel nevertheless responded to the summary judgment motion as if the plaintiffs had moved against him as well. *See* Weinstein, Pinson & Riley, P.S. and Evan L. Moscov's Resp. in Opp'n to Pls.' Mot. for Summ. J., ECF No. 204 ("WPR Response"). The joint WPR/Moscov response brief does not, however, offer any arguments peculiar to Moscov. The Court takes from this curious state of affairs that the parties agree that with respect to the plaintiffs' summary judgment motion, as WPR goes, so goes Moscov. And like the briefs, this opinion will generally not distinguish between WPR and Moscov.

4

inferences in favor of the nonmoving party." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015).

I.    **Defendant WPR**

Section 1692e of the FDCPA states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Without limiting the application of that general definition, the statute also goes on to provide a non-exhaustive list of conduct that is considered a violation of this provision. This list includes the "false representation" of "the character, amount, or legal status of any debt," as well as the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(2)(A), (10).

With respect to WPR, the FDCPA analysis is straightforward. WPR does not contest that it is a "debt collector" under the meaning of the statute. Nor does it contest that the representations it made in Paragraph 12 of the state court complaints were made "in connection with" the collection of a debt. They quite clearly were, as the entire purpose of those lawsuits was to collect outstanding debts. In addition, as noted above, the Seventh Circuit has held that Paragraph 12 was misleading and deceptive as a matter of law.

WPR makes only two arguments in opposition to summary judgment, both of which are foreclosed by the law of the case doctrine.[3] First, citing the Supreme Court's decision in *Spokeo,*

---

[3] Under this doctrine, a "ruling made in an earlier phase of a litigation controls the later phases unless a good reason is shown to depart from it." *Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 853 (7th Cir. 2004); *see also United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008) ("Under the law of the case doctrine, a court generally should not reopen issues decided in earlier stages of the same litigation."). The doctrine, however, is a flexible one; it permits a court "to revisit an issue if an intervening change in the law, or some other special circumstance, warrants reexamining the claim." *United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993). One other generally accepted exception applies "if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.'" *Agostini v. Felton*, 521 U.S. 203, 236 (1997) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)). The law of the case doctrine is closely related

5

*Inc. v. Robins*, 136 S. Ct. 1540 (2016), it contends that the plaintiffs have failed to adequately allege that they suffered an injury in fact and thus lack standing under Article III. *Spokeo* reiterated that to establish injury in fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). It clarified that concreteness and particularization are two separate and independent requirements, and that to be concrete, an injury must "actually exist"; it must be "real," and not "abstract." *Id.* WPR asserts that none of the plaintiffs have suffered any concrete harm as a result of the language in Paragraph 12, and that they therefore lack standing. *See* WPR Response 7-9.

The problem, however, is that this Court has already decided this issue. WPR made this same argument in its brief in opposition to the plaintiffs' motion for class certification. *See* Resp. in Opp'n to Pls.' Mot. for Class Certification 3-5, ECF No. 143. In its ruling granting the motion, the Court discussed this argument at some length and rejected it, concluding that the plaintiffs had suffered a concrete harm and that they had standing to assert their FDCPA claims. *See* Mem. Op. and Order 3-9. The Court reached this conclusion in light of both *Spokeo* and two other, more recent Seventh Circuit decisions that interpreted and applied it to standing questions, *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884 (7th Cir. 2017), and *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016).

WPR's most recent brief inexplicably ignores all of this. The firm makes no new arguments as to why the plaintiffs lack standing that were not present in its earlier filing. WPR has not pointed to any "special circumstance" that would indicate that the law of the case doctrine should not apply

---

to the mandate rule, which "requires a lower court to adhere to the commandments of a higher court on remand." *United States v. Polland*, 56 F.3d 776, 777 (7th Cir. 1995).

and that this Court should reconsider its prior decision. It has not argued that the Court's previous decision was clearly erroneous—indeed, it has ignored that decision entirely, and does not even cite or mention the Court's prior ruling. Nor has WPR contended that there has been an intervening change in the law since then. All of the opinions cited in its section on standing were published before this Court's ruling on class certification, and other than *Spokeo*, none of them are binding on this Court.[4] The Court concludes, therefore, that its previous ruling is the law of the case, and it will not reconsider that decision. The plaintiffs have standing to assert their FDCPA claims.

WPR's second argument against summary judgment is that the plaintiffs have not met their burden to show that Paragraph 12 contained a ***materially*** false or misleading statement. In this circuit, claims that a defendant has violated 15 U.S.C. § 1692e are evaluated under an objective "unsophisticated consumer" standard. That is, the question whether a debt collector has violated § 1692e turns on whether "the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). The Seventh Circuit has also interpreted § 1692e as requiring a plaintiff to demonstrate that a false or misleading statement is material, which means that the statement must have "the ability to influence a ***consumer's*** decision." *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012) (quoting *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011)) (emphasis in original). Whether a statement is "false, deceptive, or misleading" and whether it is material are distinct issues. *See, e.g.*, *id.* at 822-27 (separately addressing whether a

---

[4] In addition, in *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337 (7th Cir. 2018), decided after the briefing in this case was complete, the Seventh Circuit concluded that the plaintiffs in an FDCPA case alleging violations of § 1692e had Article III standing to pursue their claims in light of *Spokeo*. *See id.* at 344-46.

statement was misleading and material); *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366-68 (7th Cir. 2018) (same).[5]

In the present case, the Seventh Circuit determined that the statements at issue were plainly deceptive and misleading to an unsophisticated consumer and that "Paragraph 12 is misleading and deceptive as a matter of law." *Marquez*, 836 F.3d at 815. WPR correctly notes that the Seventh Circuit did not directly address whether this misrepresentation was material, and it argues that it was not. The plaintiffs respond, however, that the materiality question is nevertheless controlled by the Seventh Circuit's opinion, as the conclusion that the misstatement in Paragraph 12 was material is implicit in that court's decision.

The plaintiffs have the better of this argument. The Seventh Circuit concluded that Paragraph 12 is misleading to an unsophisticated consumer in two distinct ways: both "as to the proper timing to respond to the complaint and as to the manner of response." *Id.* at 813. First, with respect to timing, the court wrote:

> A plain reading of the summons and the complaint would cause a consumer to believe that he had until the date in the summons to file an answer and contest the claim, but that beyond the 30-day period in paragraph 12 he could no longer contest the validity or correctness of the debt. Because the 30-day period would expire before the date that the answer had to be filed for each of the litigants, those provisions in conjunction would lead an unsophisticated consumer to believe that he had that 30-day period to dispute the debt and beyond that period he could not dispute that debt in his answer.

---

[5] There is some language in the Seventh Circuit's case law that, divorced from context, might be read to suggest that the materiality requirement is subsumed into the analysis dealing with whether a statement is misleading or deceptive. *See, e.g.*, *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 758 (7th Cir. 2009) ("A statement cannot mislead unless it is material."). In context, however, it is clear that in *Hahn* the court used the term "misleading" to define a false statement that would matter to the unsophisticated consumer—*i.e.*, a materially false statement—and expressly confirmed that not all false statements are material.

*Id.* For all of the plaintiffs, the time provided to "dispute the debt" was shorter than the time period provided by law for them to answer the complaint. The result, the Seventh Circuit said, was that an "unsophisticated consumer" would be led to believe that "beyond that time period in Paragraph 12 for disputing the debt, even if filing an answer, the validity of the debt could no longer be disputed in that answer." *Id.*

Second, regarding the manner of response, the Seventh Circuit observed that the language in Paragraph 12 concerning the 30-day period to dispute the debt "mirrored the earlier demand letter to the consumers informing them of their rights to dispute the debt." *Id.* at 814. "The inclusion of that sentence in the complaint," it said,

> would lead an unsophisticated consumer to believe that she must dispute the debt through the procedures outlined in the earlier letter, rather than in an answer in court, or she would forfeit her right to contest the debt. That would place the consumers at risk of losing their rights in court if they disputed the debt through contact with the debt collectors rather than in the form of an answer.

*Id.*

This analysis compels the conclusion that Paragraph 12 must be deemed material. As already noted, the test for whether a misstatement is material is whether the statement has the ability to influence a consumer's decision. Misleading a debtor about his or her ability to contest a debt and to respond to a lawsuit seeking to collect an unpaid debt plainly could influence a consumer's decision. Consider, for example, an unsophisticated consumer who is misled in the first way that the Seventh Circuit describes, and is led to think that beyond the time period in Paragraph 12, the validity of the debt cannot be disputed in the answer. Then imagine that this person does not get around to answering the complaint until after the 30-day period in Paragraph 12 has elapsed. The language in Paragraph 12 could reasonably lead this unsophisticated consumer to conclude that he or she could no longer contest the validity of the debt, and to not do so in the

9

answer as a result. The issue of whether Paragraph 12 was material, therefore, is controlled by the Seventh Circuit's decision, which permits no other conclusion but that the statements included in Paragraph 12 of the complaints could have prompted an unsophisticated consumer to act in a manner that compromised his or her ability to contest the collection action. To the extent that WPR contends that no consumer could have actually been misled in any way that would have had the ability to influence their decisions, *see* WPR Response 4-6, the law of the case doctrine and the mandate rule foreclose this line of argument.

WPR also asserts that there is no evidence that any of the named plaintiffs in this case—or any of the unnamed class members—were actually misled by Paragraph 12. *See id.* at 6-7. That is beside the point.[6] Again, the applicable standard of materiality is whether the statement has the **ability** to influence the decisions of an unsophisticated consumer. *Lox*, 689 F.3d at 826-27 (misleading statement was material whether or not it actually affected plaintiff's conduct). This is an objective, not subjective, inquiry. The fact that the plaintiffs in this particular case may not have been influenced by the language in Paragraph 12 is not relevant to the materiality analysis.

In summary, neither of WPR's arguments is convincing. The Court concludes that there is no genuine issue of material fact as to any of the elements of liability under § 1692e and that the plaintiffs are entitled to judgment as a matter of law. Accordingly, summary judgment is granted in the plaintiffs' favor against WPR on the issue of liability.

---

[6] Evidence of lack of confusion is, however, often relevant to the question whether a statement is misleading (rather than material). *Lox*, 689 F.3d at 822 (as to statements that are potentially misleading, "plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive"). But here, the Seventh Circuit has determined that the statements in Paragraph 12 were misleading as a matter of law, and this Court is not free to revisit that question no matter how compelling the defendants' evidence of lack of confusion.

## II.     Defendant NCO

As the previous section demonstrates, it is clear that a violation of the FDCPA took place. It is uncontested that WPR is a debt collector under the FDCPA and that the representations in the state court complaints were made "in connection with" the collection of a debt. It is also established that the misstatements in Paragraph 12 were misleading and that they were material. The central dispute between the plaintiffs and NCO is whether NCO can be held liable for those misstatements. That question, in turn, primarily depends on whether NCO can be classified as a "debt collector" under the meaning of the FDCPA.

This can be seen by looking at two key cases: *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016), and *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103 (6th Cir. 1996) (cited with approval in *Janetos*). In *Janetos*, the plaintiffs sued both a creditor (Asset Acceptance, LLC) and a law firm (Fulton Friedman & Gullace). Fulton had sent collection letters to the plaintiffs on behalf of Asset Acceptance. These letters identified Asset Acceptance as the "assignee" of the original creditors but said that the plaintiffs' accounts had been "transferred" from Asset Acceptance to Fulton, and did not explicitly identify Asset Acceptance as the current creditor. *Janetos*, 825 F.3d at 319. The Seventh Circuit determined that Fulton's letters violated the FDCPA and granted summary judgment in the plaintiffs' favor on the issue of liability against Fulton. *See id.* at 321-25.

The *Janetos* court then turned to the question whether Asset Acceptance could be held vicariously liable for the letters that Fulton had drafted and sent. It determined that the answer was yes, on the basis that Asset Acceptance was itself a debt collector. It wrote that a "debt collector should not be able to avoid liability for unlawful debt collection practices simply by contracting with another company to do what the law does not allow it to do itself," and that it was fair "to require a debt collector who is independently obliged to comply with the [FDCPA] to monitor the

11

actions of those it enlists to collect debts on its behalf." *Id.* at 325. Had Asset Acceptance not been a debt collector, however, the outcome would have been different. As the *Janetos* court noted, "a company that is not a debt collector would not ordinarily be subject to liability under the [FDCPA] at all." *Id.* Citing *Wadlington*, it wrote that for companies that are not debt collectors, "it makes less sense to impose vicarious liability on such a company for its attorney's violations simply because the attorney happens to be a debt collector." *Id.* (citing *Wadlington*, 76 F.3d at 108). In *Wadlington*, the Sixth Circuit held that companies that were not debt collectors could not be held liable for filings by their attorneys that violated the FDCPA, largely on the basis that the relevant statutory provision "imposes liability only on a '***debt collector*** who fails to comply with [a] provision of this subchapter.'" *Wadlington*, 76 F.3d at 108 (quoting 15 U.S.C. § 1692k) (emphasis in original).

To synthesize, the rule that emerges from *Janetos* and *Wadlington* is that if a company is a debt collector under the FDCPA, it cannot use a third party such as a law firm to shield itself from liability under the statute, and it will be vicariously liable for FDCPA violations committed by that third party on its behalf.[7] But if the company is not itself a debt collector, then it will not be subject to liability (vicarious or otherwise) for actions taken to collect a debt. The key question, then, is whether NCO is a debt collector under the FDCPA.

---

[7] Attempting to draw an untenable distinction between debt collection activity and legal work, NCO mischaracterizes *Janetos* by asserting that the case "recognizes that vicarious liability does not attach when the party creating the underlying liability is, like here, a lawyer operating as an advocate in a lawyerly capacity." EGS Financial Care Inc.'s Reply in Supp. of Mot. for Summ. J. 7, ECF No. 208. Nothing in *Janetos* supports NCO's premise that a company that is itself a debt collector—like NCO (*see infra* at 13-16)—can escape responsibility for misleading material statements made in connection with litigation activity by a debt collector/attorney it hires to collect a debt. To the contrary, in *Wadlington*, with which the Seventh Circuit expressly agreed, the debt collector/attorney was, like WPR, hired to pursue litigation to collect unpaid debts. *See* 76 F.3d at 106. Neither *Janetos* nor *Wadlington* suggests an exception to the vicarious liability rule when the primary violator is an attorney trying to collect debts while acting in "a lawyerly capacity."

12

"Whether a defendant is a 'debt collector' as defined by the FDCPA is a question of law appropriate for resolution on summary judgment." *Schlaf v. Safeguard Props., LLC*, No. 15 C 50113, 2017 WL 4856227, at *2 (N.D. Ill. Aug. 29, 2017), *aff'd*, 899 F.3d 459 (7th Cir. 2018). The statutory definition provides that the term "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added). The statute also lists a series of specific, enumerated exceptions to this general definition. For example, one of them states that the term "debt collector" does not include a person who is collecting or attempting to collect a debt when that debt "was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F).

As the Seventh Circuit has made clear, the general definition for a debt collector is disjunctive; that is, it "establishes two categories of debt collectors: (1) those whose 'principal purpose . . . is the collection of any debts,' and (2) those who 'regularly collect[ ] or attempt[ ] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" *Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 466 (7th Cir. 2018) (citations omitted). An entity will qualify as a debt collector if it falls in either of these two categories. In NCO's briefing, its arguments that it is not a debt collector rest primarily on the actions it has taken—or not taken—in this particular case. Rather remarkably, it has all but ignored the actual statutory definition of "debt collector" throughout its briefing. While it has contended that it did not act as a debt collector in the context of this case, it has not made *any* serious effort to argue either that its "principal purpose" is not debt collection or that it does not "regularly collect" debts under the meaning of the FDCPA. This omission is all the more striking given that the plaintiffs have explicitly advanced the argument

that NCO qualifies as a debt collector under the "regularly collects" prong of the statute. *See* Mem. in Supp. of Pls.' Mot. for Summ. J. on Liability 9.

Taking the record as a whole, the Court concludes that NCO "regularly collects" debts within the meaning of the FDCPA. The evidence for this proposition consists of several components. First, there is NCO's acknowledged history of debt collection activity. In at least one previous case, *Monreal v. NCO Sys., Inc.*, No. 5:15-cv-00151-XR (W.D. Tex. Feb. 26, 2015), NCO explicitly admitted in its filings that it is a debt collector under the FDCPA. *See* Ex. 18 ¶ 8, ECF No. 194-1 ("Defendant NCO is a debt collector as defined in the FCDPA."); Ex. 19 ¶ 8, ECF No. 194-1 ("NCO admits the allegations contained in Paragraph 8."). NCO continues to admit that it was a debt collector in the context of the *Monreal* matter, though it denies that it was acting as a debt collector in the context of this lawsuit. EGS Financial Care, Inc.'s Resp. to Pls.' Rule 56.1 Statement of Material Facts ¶ 11, ECF No. 203. It further admits that "historically it did engage in collection activities" and that it "currently holds a collection agency license from the state of Illinois." NCO Financial Systems, Inc.'s Answer and Affirmative Defenses to Pls.' Second Am. Compl. ¶¶ 14-15, ECF No. 98. At least one other judge in this district has also previously concluded that NCO "**acts as a debt collector**, as defined by § 1692a of the FDCPA, because it **regularly uses** the mails to collect, or attempt to collect, consumer debts, in the Northern District of Illinois." *Allen v. NCO Fin. Sys., Inc.*, No. 01 C 3992, 2002 WL 1291791, at *2 (N.D. Ill. June 11, 2002) (emphasis added).

Second, NCO has filed a large number of collection suits in its own name in the recent past. The plaintiffs contend that between December 2013 and October 2016, "NCO filed at least 164 collection suits in its own name in state courts around the United States." Pls.' Additional Facts ¶ 12. They further assert that between June 1996 and July 2013, "NCO filed 404 small claims

collection cases in various courts in Indiana." *Id.* ¶ 13. NCO denies this, on the grounds that the exhibits that the plaintiffs have provided to support these points show only cases in which NCO appeared in the case captions, and do not reflect collection suits in NCO's name. *See* EGS Financial Care, Inc.'s Resp. to Pls.' Rule 56.1 Statement of Material Facts ¶¶ 12-13. With respect to the state court cases, however, the dockets of a large majority of the cases that the plaintiffs have provided reflect that the type of suit listed for these cases is something like "collections" or "enforcing judgments." *See generally* Ex. 21, ECF No. 194-1. NCO has offered no reason to doubt that these descriptions accurately summarize the contents of the cases, nor has it offered any other explanation for why it was bringing all of these lawsuits if they were not collections cases.[8]

Third, NCO's status as a debt collector is reinforced by the existence of its attorney network. Around December 2012, NCO maintained a network of more than 150 law firms. Agreed Facts ¶ 32. Law firms that wished to become members of this network were required to complete an application. *Id.* ¶ 33. The application form stated that the attorney network applied "the skills, resources, and expertise of more than 150 qualified, reputable collection law firms to our clients' portfolios," and added that these firms "operate in every jurisdiction of the United States." *Id.* ¶ 35. As NCO itself concedes, once firms were accepted into the network, what NCO ultimately did with this network was to "***refer debts to law firms in its attorney network for collection***." Pls.' Additional Facts ¶ 5; EGS Financial Care, Inc.'s Resp. to Pls.' Rule 56.1 Statement of Material Facts ¶ 5 (emphasis added). This fact provides further evidence for the proposition that NCO regularly collected debts under the meaning of the FDCPA.

---

[8] NCO makes no claim, for example, that it was engaged in collecting debts that it owned. *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) (individuals and entities that regularly purchase debts originated by someone else and then seek to collect those debts for their own accounts are not "debt collectors" under the FDCPA).

Finally, this point is further underscored by the facts of this particular case and the nature of NCO's relationship with WPR. NCO and WPR entered into an "Attorney Network Services Agreement" in March 2013. Agreed Facts ¶ 43. In describing the purpose of that agreement, the contract stated that "NCO, on behalf of the Client, hereby retains you to collect monies owed Client on unpaid and delinquent accounts referred to you by NCO during the terms of this Agreement." *Id.* ¶ 44. WPR agreed to "diligently pursue the collection of monies due on the referred accounts promptly and in accordance with applicable state and federal law as interpreted in your jurisdiction." *Id.* Between March 12, 2013, and February 23, 2014, WPR filed 929 lawsuits in Illinois containing the Paragraph 12 language at issue in this case. *See id.* ¶ 14.

Based on all of this information, the Court concludes that NCO is a debt collector under the "regularly collects" prong of the FDCPA's definition. *Prince v. NCO Fin. Servs., Inc*, 346 F. Supp. 2d 744 (E.D. Pa. 2004), which NCO relies on, is not to the contrary. In *Prince*, the court determined that NCO was not a debt collector under the FDCPA, *see id.* at 751; NCO cites this case for the proposition that it cannot "always" be considered a debt collector. *See* EGS Financial Care Inc.'s Resp. in Opp'n to Pls.' Mot. for Summ. J. 3-4, ECF No. 205. *Prince*, however, is distinguishable from the present case in a critical way. Recall that the FDCPA's definition of a debt collector contains a list of specific statutory exceptions, one of which is that it does not apply when the collection activity "concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). The *Prince* court granted summary judgment in NCO's favor because the plaintiff had not raised a genuine issue of material fact as to whether her account was in default. *See Prince*, 346 F. Supp. 2d at 747-50. In other words, the reason that NCO was not considered to be a debt collector was that a specific statutory exception applied. Here, the loans were in default, *see* Agreed Facts ¶¶ 49-50, and NCO has made no attempt to argue that they were

16

not. While NCO is correct that it may not "always" be a debt collector, because the Court has determined that it falls under the "regularly collects" prong of the statute, it is a debt collector for the purposes of this case unless a specific exception applies. NCO has not even tried to argue that any such exception would apply here.

As *Janetos* makes clear, because NCO is itself a debt collector, it can be held vicariously liable for the actions taken by the attorneys with whom it contracted. As the Seventh Circuit wrote in *Janetos*, it is "fair and consistent with the [FDCPA] to require a debt collector who is independently obliged to comply with the [FDCPA] to monitor the actions of those it enlists to collect debts on its behalf." *Janetos*, 825 F.3d at 325. That is precisely what NCO enlisted WPR to do in this case. Here, the state court lawsuits were all filed by WPR and signed by Moscov. While the nominal plaintiffs in these cases were the National Collegiate trusts, it is clear, as both this Court and the Seventh Circuit have previously observed, that the lawsuits were filed on behalf of NCO. *See* Mem. Op. and Order 2 n.1; *Marquez*, 836 F.3d at 809. NCO itself writes in its briefing that it "retained the law firm of WPR to collect money owed to various creditors." Mem. of Law in Supp. of EGS Financial Care Inc.'s Mot. for Summ. J. 7, ECF No. 196. WPR was a member of NCO's attorney network, and NCO referred debts to the firm, including the plaintiffs' debts, for collection. As such, the application of vicarious liability is appropriate.

NCO makes various arguments to the effect that *Janetos* does not control this case, but its efforts are unpersuasive. First, it contends, again, that it is not a debt collector and so is not subject to the FDCPA at all. *See id.* As outlined above, however, this Court has already rejected that conclusion. NCO also quotes the following language from *Janetos*: "As the Sixth Circuit explained in *Wadlington*, it makes less sense to impose vicarious liability on such a company for its attorney's violations simply because the attorney happens to be a debt collector." *Janetos*, 825 F.3d at 325.

17

What NCO ignores is that the previous sentence in *Janetos* makes crystal clear that the phrase "such a company" refers to "a company that is not a debt collector." *Id.*

NCO also asserts that it is inappropriate for a "lay entity" such as itself to be required "to control, supervise or monitor the actions of a lawyer in the legal process." Mem. of Law in Supp. of EGS Financial Care Inc.'s Mot. for Summ. J. 7. It notes that it did not prepare any of the legal pleadings at issue in this case and that it did not review or approve the complaints that were filed by WPR. *Id.* at 8. NCO further observes that the language in Paragraph 12 was purely "legal," in the sense that it was a pure statement of law and did not involve, for example, a case where the complaint misrepresented facts that NCO had provided to WPR. *Id.* In this context, it writes, "*Janetos* recognizes that vicarious liability does not attach when the party creating the underlying liability is, like here, a lawyer operating as an advocate in a lawyerly capacity." *Id.* at 7.

This reading of *Janetos* is simply mistaken. In *Janetos* itself, the party that "creat[ed] the underlying liability" was a law firm, Fulton Friedman & Gullace, just as in this case. It is true that the misrepresentation in *Janetos* came in a collection letter rather than a court filing, and the misrepresentation was arguably of a somewhat more "factual" than purely "legal" nature. But there is simply nothing in *Janetos* that would indicate that either of these distinctions is legally meaningful. Indeed, the opinion specifically rejected the proposition that "actual control over the specific challenged conduct" was required in order for vicarious liability to attach. *Janetos*, 825 F.3d at 326. Moreover, in *Wadlington*, which *Janetos* cited with approval, the attorney responsible for the primary conduct that was potentially violative of the FDCPA was, like WPR, an attorney engaged in litigation activity. *See* 76 F.3d at 106. These two cases cannot be read to create the distinction that NCO suggests. The bottom line is that *Janetos* controls the outcome in this case.

18

As a result, NCO is vicariously liable for WPR's violation of the FDCPA, and the plaintiffs are entitled to summary judgment on the issue of liability against NCO.

\* \* \*

For the reasons stated above, NCO's motion for summary judgment is denied, and summary judgment is granted in the plaintiffs' favor on the issue of liability against both WPR and NCO. A status hearing is scheduled for May 15, 2019, at 9:00 a.m. to discuss the remaining issues in the case.[9] The Court anticipates unsealing all exhibits referred to in this opinion; any objections must be made in writing before this date and with a document-by-document explanation as to why continued sealing of that document is appropriate.[10]

Dated: April 24, 2019

John J. Tharp, Jr.
United States District Judge

---

[9] Pursuant to Fed. R. Civ. P. 56(f), defendant Moscov is required to show cause at the status hearing why summary judgment should not be entered against him on the same basis that it is entered as to WPR.

[10] The Court also declines to address, at this stage, the issue of which defendants' net worth should be taken into account for the purpose of determining the damages of the class. The plaintiffs have urged the Court to conclude that the net worth of both WPR and NCO should be considered. *See* Mem. in Supp. of Pls.' Mot. for Summ. J. on Liability 14. As the plaintiffs have moved for summary judgment only on the issue of liability, the Court does not decide this question. It will be addressed along with all of the other issues related to the damages to be assessed at a later date.